THE PEOPLE ex rel. STEPHEN L. COOK, Respondents, v. THE BOARD OF POLICE OF THE METROPOLITAN POLICE DISTRICT OF THE STATE OF NEW YORK, Appellants.

On a common law *certiorari*, the court may go beyond the inquiry, whether the inferior tribunal had jurisdiction of the person and subject-matter, and whether its proceedings and judgment were within that jurisdiction; and may examine the case upon the whole evidence, to ascertain whether any error had been committed in the proceedings before such inferior tribunal.

Where the board of police commissioners have removed a patrolman from his office or membership, until such determination has been reversed, such member is not at liberty to serve as patrolman, or as a member of the police force.

Although such removal by the board may be illegal, such alleged delinquent is not in duty bound to report himself at roll-call, and tender performance of duty, etc.; and his failure to do so is not to be deemed an absence from duty without leave.

Neither upon principles of the common law, nor under the Code, are costs awardable on a common law *certiorari*, and it is error in an inferior tribunal to award costs in such cases.

APPEAL from judgment of the Supreme Court in General Term of the first district, affirming a judgment of the Special Term on *certiorari*, by which a judgment or order of the appellants, imposing a fine upon the relator, was reversed and annulled.

The relator was a member of the police force of the metropolitan police district, and patrolman of the ninth precinct, and it appeared by the return, that, on the 19th of January, 1863, a charge of neglect of duty was preferred against him, the specification of which was, absence from duty, and from the station-house of the ninth precinct, from October 26, 1861, to the 8th day of January, 1863,—a period of 439 days. Upon this, he was tried by the appellants, and, on the 14th of February, 1863, the judgment of the board was pronounced, whereby they find him guilty of the matters charged, and therefore order and adjudge, that he be fined the amount of 439 days' pay, and that his pay for that number of days be, and the same is, hereby forfeited.

In obedience to the precept of the *certiorari*, the return of the appellants set out the charge, the notice thereof to the relator, and the requirement to appear and answer, and notice of the time and place of trial, the relator's written admission of due personal service upon him of the complaint, charges, specifications and notice of trial, and, also, the testimony and proofs taken on the trial, certain of the rules and regulations of the appellants, with the finding and judgment of the appellants, convicting him of the charge, and imposing the fine. The case is certified to have closed on the 10th of February; the judgment was rendered on the 14th.

Various questions were made on the trial as to the mode of taking the evidence, and the effect of a previous convic-. tion and fine for three days' absence, and as to the right of the relators to make the forfeiture embrace more than the pay for the month immediately prior to the day of return to duty. After the trial was closed, but before judgment, a regulation of the board in respect to absence from duty was amended, and, upon the argument of the *certiorari* below, and on this appeal, a question was made respecting the right of the appellants to pronounce any judgment of conviction after such amendment.

But the questions decided do not require any further particular statement, except, that it appeared by the evidence, that, in 1861, the relator was charged with neglect of duty, in being absent without leave from roll-call on the evening of October 18th, and until the 21st of October, 1861. That an *ex parte* trial, or investigation, was had before the appellants, and, on the 26th of October, 1861, the appellants ordered and adjudged, that the relator be dismissed from the police force; that such dismissal was entered, and, he being absent, the order of dismissal was served by leaving the same at his residence, and on his return to the city on the 10th of November, he was verbally notified, and he received from his wife the order of dismissal. That, on application to the Supreme Court, a *certiorari* was issued, and the proceedings were there reviewed, and, in January, 1863, the judgment

of the appellants, dismissing the relator, was vacated, and the relator was restored on or about the 8th of January, 1863.

The charge and specification, conviction and sentence, now in question, were for absence from duty, and from the station-house from the day on which the relator was dismissed by the appellants, until the order or judgment of dismissal was reversed by the Supreme Court.

The Supreme Court reversed the proceedings, and the board appeal to this court.

*A. I. Vanderpoel,* for the appellants.

*Wm. Henry Arnoux,* for the respondents.

WOODRUFF, J. The board of police for the metropolitan district had jurisdiction of the subject-matter of the charge, of the charge itself, and of the person of the relator who appeared on the trial before them. It is not objected, that the judgment is not such as, upon due conviction, they had authority to pronounce and carry into effect.

The question thereupon arises, which I think the principal question on this appeal, may the court, on a common law *certiorari,* go beyond the inquiry, whether the inferior tribunal had jurisdiction, and was the proceeding and judgment within that jurisdiction? Other questions, it is true, were raised and discussed, but, in the view that I take of the case, it will be unnecessary to consider them. Some of them, in my judgment, are mere questions of form or practice, which are clearly not open to review.

It is insisted, that, on the trial, there was no evidence that the relator was guilty of the offense charged. That the actual facts were undisputed. That the alleged neglect of duty, and the only neglect of duty in any wise appearing, was his absence during the period of his dismissal from the force; and that it was error in law to hold that an offense, and convict and pronounce judgment thereupon.

If, as insisted by the appellants, the court cannot, on *certiorari,* look into the evidence, nor the rulings thereupon,

with a view to the correction of errors in law committed on the trial, then the particular facts upon which the finding of guilty was based cannot be considered; jurisdiction appearing, and the judgment being within that jurisdiction, the judgment is to be deemed, on this *certiorari*, conclusive. It has often been said, that a common law *certiorari* brings up the record only, and not the evidence, which forms no part of the record, and, if so, then the circumstance, that, in the particular case, the inferior tribunal was required by the writ to return, and did return, the evidence, does not enlarge the field of review, or bring any other than jurisdictional questions under examination.

That this is the extent and limit of the review by a common law *certiorari*, was many times stated in the former Supreme Court, and has been often stated in the present Supreme Court.

Thus, BRONSON, J., in *The People* v. *The Mayor, etc., of New York* (2 Hill, 11), says of a common law *certiorari*, the writ "removes nothing but the record — or other entry in the nature of a record — and, if the return contains any thing more, it cannot be regarded." This is in accordance with the opinion of SAVAGE, Ch. J., in *Nichols* v. *Williams* (8 Cow. 16): "A *certiorari* — except to a justice's court (where it was otherwise by statute) — brings up the record only, and not the testimony."

In *Ex parte The Mayor of Albany* (23 Wend. 277), Mr. Justice COWEN discusses the office of a *certiorari* at great length, and refers to the numerous previous cases in this State on the subject, and concludes (p. 287), "The amount of these are, that we will not, in any case, on a common law *certiorari*, go beyond the question of power, which is another word for jurisdiction;" (p. 288) "We cannot look into the testimony on the merits, even where the return comes from a tribunal bound to act upon the general law of evidence."

And yet, in *Baldwin* v. *Calkins* (10 Wend. 167), that court had reviewed and set aside an assessment of damages by the judges of Onondaga, under a statute authorizing the taking of lands for the purposes of the erection and mainte-

nance of a dam, on payment of the damages to be so assessed, and the ground of reversal was, that the principles upon which the judges assessed the damages were erroneous.

The court disclaim any power to determine the amount of damages, but assert the power and duty to see that the prin ciple upon which the judges proceed is according to law.

It would not be profitable to review or even to cite a length the numerous cases in the Supreme Court. Some of them are *Starr* v. *Trustees of Rochester* (6 Wend. 566); *The People* v. *Dalton* (15 id. 583-4); *Prindle* v. *Anderson* (19 id. 394); where the court distinctly held that they could not on *certiorari* reverse for an error in law committed on a trial in summary proceedings to remove a tenant, and that such matter, though returned, did not come under review. In the Court of Errors (see 23 Wend. 616) the decision was affirmed, but not upon this ground. The opinion of the chancellor was to the effect that under the statute it was competent for the court to examine the decisions of the judge in those proceedings, and that under the language of the statute the power of the court was not restricted to what the common law gave to that court upon an ordinary *certiorari* to correct the proceedings of an inferior tribunal.

In *Simpson* v. *Rhinelander* (20 Wend. 103) it is conceded that in England on penal convictions, the return to the *certiorari* must set out the evidence so that the court may judge whether the conviction has been had upon proper evidence. Yet this is claimed not to apply to summary proceedings on complaint for the removal of an officer for misbehavior, and the like, of which an example is found in *Rex* v. *Lloyd* (2 Stra. 996); where the relator, a clerk of the peace of the county, upon complaint exhibited to the Quarter Sessions containing several charges of misbehavior, was, on examination thereof in open court, and the hearing and examination of witnesses, found guilty, and removed from office. On *certiorari* the Court of King's Bench denied that the return to the writ should set forth the evidence.

And in *Johnson* v. *Moss* (20 Wend. 145, 148) the refusal to look beyond the question of jurisdiction in reviewing a

judgment rendered by a justice, was carried to the full length above stated, even though the declaration and the proof were insufficient; and see also *Wilson* v. *Green* (id. 189).

In *Niblo* v. *Post's Executors* (25 Wend. 280) the power of the court, to review and correct errors in law committed on the trial of summary proceedings to remove a tenant, was discussed most elaborately by counsel, insisting that at common law there was no restriction, as well as also that under the statute the court would review and correct all such errors; and on the argument the chancellor stopped the counsel and referred to his opinion in *Anderson* v. *Prindle* as his own view, and, as he believed, that of the other members of the court. The case was decided upon another point, but it must nevertheless be regarded as an opinion of the Court of Errors that the statute warranted such review.

The argument and the cases cited by the counsel for the plaintiff in error, tend very strongly to show that the limitation of the questions reviewable on a common law *centiorari*, so often before stated, rested upon no sufficient foundation.

In *The People* v. *The City of Rochester* (21 Barb. 656) the same rule is stated, and the distinction between a common law *certiorari* and the writ given by various statutes is noticed, in which latter cases the return is deemed to bring up for review the decisions on questions of law arising in the course of the proceedings, as held in the Court of Errors in *Anderson* v. *Prindle.*

In *The People* v. *Overseers of Barton* (6 How. Pr. 25) proceedings to review the judgment of the Court of Sessions of Tioga county in a case of bastardy, by common law *certiorari*, was considered by the Supreme Court of the sixth district, and the opinion of Justice MASON reviews numerous cases, and he follows the rule, that wherever, were the suit an action at law, the matter alleged for error is of such a nature that a bill of exceptions would be essential to its review by writ of error, a common law *certiorari* will not reach it.

Other cases to the like effect in the present Supreme Court are noted in the digest.

These cases suggest three classes of cases only:

1. A *certiorari* at the common law brought to review the summary conviction of a person charged with a crime or offense in laws where a *certiorari* and not a writ of error, is the process by which a review is to be sought.

2. A common law *certiorari* brought to review other proceedings of inferior tribunals, magistrates, boards, or officers, under a special or limited jurisdiction.

3. A *certiorari* prescribed or authorized by statute for the review of proceedings in certain cases.

As to the last it has been in later years held that errors not jurisdictional, may, under the provisions of the statutes, be made the ground for reversal.   (See cases above cited.)

As to the second, the decisions in this State, thus far referred to, seem to hold, with much uniformity, that none but jurisdictional questions can be considered.

And as to the first, it seems to have been conceded, that in England a conviction brought up by *certiorari* would be examined substantially as upon a bill of exceptions, and in the case cited no doubt is expressed that the writ would here raise the same questions.

In all the cases it is clear that the decision of a mere question of fact upon the weight of the evidence, cannot be reviewed.

In this court, the course of decision appears to have been as follows:

*Low* v. *Payne* (4 N. Y. 247) is a review of a judgment in a civil action rendered by a justice of the peace, where the statute, in terms, provides for a review of the proceedings, even in respect of the evidence, so far as error is alleged. (2 R. S. 255, etc.)

*The People* v. *Goodwin* (5 N. Y. 568) was a common law *certiorari* to review the proceedings of referees appointed to hear an appeal from commissioners of highways, and it was held, that the questions of jurisdiction only could be reviewed.

In *Morewood* v. *Hollister* (6 N. Y. 309) a *certiorari* was brought under the statute (2 R. S. 49, § 47) to review pro-

ceedings for the discharge of an insolvent, and it was held, that the court could examine and correct any erroneous decision upon a question of law. The opinion of PRATT, J., in the Supreme Court, and the opinions in this court contain very full reference to the cases on the subject. The decision reversed the proceedings, and the review of the alleged error was placed distinctly upon the statute, in the opinion of GARDINER, J. The opinion of Mr. Justice EDMONDS concurs in regard to the effect of the statute, and he enters at some length into a discussion as to the first of the three classes above named, for the purpose of showing, that, in cases of summary conviction, the same principle has been long established in the English courts, in the courts of other States and in our own. The report does not disclose whether or not either of the other judges concurred with him in this, nor does it appear that he deemed the decision in the case under consideration to extend to every review had by a *certiorari* at the common law.

In the case of *Heywood* v. *The City of Buffalo* (14 N. Y. 534), where a bill in equity was filed to restrain the collection of an alleged illegal assessment, JOHNSON, J., uses very broad language touching the relief to be had by *certiorari,* "That writ brings up the proceedings of the inferior body for review, and judgment passes directly upon their determination and judgment thus reviewed." But this can hardly be said to express an opinion, whether other than jurisdictional questions could be examined; the contrary appears in the opinion of the same judge, in 30 N. Y. 76, below cited. The actual decision of the case proceeded, as indicated by his opinion and that of DENIO, J., upon various other grounds.

In *The People* v. *Wheeler* (21 N. Y. 82), where a *certiorari* was brought to review proceedings of commissioners of highways, in discontinuing a highway, and a certificate had, after the return to the writ, been procured from the respondents in *certiorari,* showing that one of them was a relative of the applicant for the discontinuance, WRIGHT, J., expresses himself guardedly, thus: "The record did not show that the applicant was related to the commissioner, and the court

below assumed to act upon a fact not appearing therein, and which the commissioners were not required by the court to return. The main inquiry on *certiorari* relates to the power or jurisdiction of the inferior tribunal, and the question can only be determined by matters appearing in the record."

The decision of the case, however, was on the ground, that, if the fact was conceded, the relationship was, in that case, no ground for reversing the proceedings.

In *Mullins, Jr.*, v. *The People* (24 N. Y. 399), it is distinctly held in this court, that a common law *certiorari* brought to review a conviction of the relator before a magistrate, of a statute offense punishable by fine, brings up not only questions affecting the jurisdiction of the magistrate or the regularity of the proceedings before him, but also whether there was sufficient evidence to warrant a conviction.

The opinion of SELDEN, J., is to the effect, that the power of review also extends to all other legal questions. He adverts to the language of BRONSON, J., in *The People* v. *The Judges of Dutchess* (23 Wend. 360), and expresses a decided opinion, that, " at least, in the class of cases in which the writ is used to remove a summary conviction before a magistrate under a penal statute, the doctrine of that case is erroneous "— citing several English cases in support of his views.

In *Benjamin* v. *Benjamin* (5 N. Y. 383), proceedings for the summary removal of a tenant were brought up for review, and it was held, in conformity with the views of the chancellor in *Anderson* v. *Prindle* and *Niblo* v. *Post's Executors*, above referred to, that the *certiorari* allowed by statute to review those proceedings, brought under review all questions of law arising upon the evidence. And, yet, the more restricted operation of a common law *certiorari* is recognized in the opinion pronounced.

An observation of DENIO, Ch. J., is found in *Susquehanna Bank* v. *Supervisors of Broome County*, wherein it was held, that a bill in equity to restrain the collection of an alleged illegal tax, could not be sustained, to this effect: " We sup-

pose that a *certiorari* might, at the discretion of the Supreme Court, be awarded to determine the validity of a tax."

On the other hand, in *The People* v. *Highway Commissioners* (30 N. Y. 72), where proceedings for the removal of encroachments upon a highway, were brought up by a common law *certiorari*, and affirmed in the Supreme Court, the judgment was reversed upon several grounds. In the opinion delivered by Johnson, J., he says: "The relator has evidently mistaken wholly the office of this writ, which is merely to bring up the record of the proceedings to enable the Supreme Court to determine whether the inferior tribunal has proceeded within its jurisdiction, and not to correct mere errors in the course of the proceeding. Here the object seems to have been to bring into review the alleged erroneous rulings of the jury, in receiving or rejecting evidence offered on the hearing before them, as though it were a bill of exceptions. Such questions do not arise, and cannot be reviewed on *certiorari*. It is enough that both the defendants and the jury had jurisdiction in the matter before them.

In *Baldwin* v. *The City of Buffalo* (35 N. Y. 375), although the decision of the case turned upon other questions, Mr. Justice Morgan observes, that, according to the decisions in this court, a writ of *certiorari* "will bring up so much of the evidence as is necessary to present the question of law, upon which the relator relies, to avoid the determination of the inferior tribunal." This general statement obviously likens the office of a writ of *certiorari* to that of a writ of error and bill of exceptions. Such could not have been his meaning, for the case in this court, which he cites, to show such decision, viz., *The People* v. *Goodwin* (5 N. Y. 568), above mentioned, is to the effect, that, so much only of the evidence should be returned as bears upon the question of jurisdiction of the inferior tribunal, of the subject-matter, and of the person of the parties; and the case of *Albany Northern Railroad Co.* v. *Brownell* (24 id. 345), the only other case referred to, does not mention the subject.

*Swift* v. *The City of Poughkeepsie* (37 N. Y. 511) was an action brought to recover back money paid upon a warrant

for the collection of an alleged illegal tax; and though the tax was deemed erroneous, yet it was held, that the action was not maintainable. The opinion delivered by Bacon, J., is to the effect that a *certiorari* brought to review the assessment, would not only bring up the question of the jurisdiction of the assessors, but the evidence on which the body acted, to which the writ is directed, as well as the ground or principle of their action, and thus present the entire case for review, and, if necessary, for correction.

And, finally, in *The People, etc.*, v. *Ferguson and others, Assessors*, heard in January and decided in March Term; and in *The People, etc.*, v. *Board of Assessors of Brooklyn*, heard in March and decided in June of the present year, this court, on appeal from a judgment in *certiorari·* in the Supreme Court, examined alleged errors in the mode and principle of assessments for taxes, and ordered a correction in particulars, not going to the entire assessment, but making an abatement therefrom.

It would be idle to attempt to harmonize the various decisions and dicta above referred to.

It is true that the court in the later cases has taken a more liberal view of the office of a common law *certiorari*, and the power of review thereby, than was expressed by the Supreme Court during many years.

The observations of the late distinguished and learned Chief Justice Kinsey, in *The State* v. *Middlesex* (Coxe, 244) on the large jurisdiction of the Court of King's Bench in England, " whose power to give redress is as unlimited and universal as injustice and wrong can be," are applied by him with great force to the power of review by *certiorari*, for the correction of errors in law which cannot be reached in any other manner. And in *New Jersey R. R.* v. *Suydam* (2 Harr. 25), the Supreme Court of New Jersey, while they disclaim the power to review mere questions of fact upon the evidence, asserted and exercised the power to reverse the award of commissioners assessing the damages sustained by the taking of lands for the purposes of a railroad, on the ground, that, in making the valuation of the lands, the

commissioners erred in law by adopting an erroneous rule or principle of valuation. There was a dissent by one judge, but his dissent proceeded on the ground that valuation involved a mere question of fact, and he states distinctly that it is settled in that State that the court is at liberty to consider any illegalities that have occurred in the proceedings reviewed. This decision is in accordance with *Baldwin* v. *Calkins*, in the late Supreme Court already mentioned.

My own conviction of the importance of the question, in view of the great number of proceedings of a summary character in which powers are exercised which affect valuable rights both of person and property, has led me to collect and compare the more prominent cases on this subject; and I cannot resist the belief that a disposition has been manifested to limit the office of this most useful writ within too narrow limits.

Let it be once established that where an officer or board of officers have juricdiction of the subject or of the persons to be affected, and proceed in its exercise according to the prescribed mode or forms, their determination is final and beyond the reach of any review, whatever errors in law they may commit, and however clear it may be upon undisputed facts that their judgment, decision or order is not warranted, — and there is danger that much of injustice and wrong may happen without possibility of redress.

On the other hand, to hold that conclusions of fact upon conflicting evidence and matters of mere detail, in the order or mode of proceeding, not violating any rule of law to the prejudice of the party, and matters which are clearly submitted to the judgment or discretion of the inferior tribunal, where the evidence presents a case for its exercise, can be so reviewed, would be in conflict with all of the previous adjudications, and produce great inconvenience and embarrassment.

It may be desirable not to multiply cases in which the appellate courts can be called upon to interfere in matters of small importance, but that furnishes no reason for denying the power to see that the rules of law are not violated, when

wrong is done, and no great public inconvenience will result from its exercise.

I conclude, therefore, that in the case before us the Supreme Court had power, and that on this appeal this court nave power, to examine the case upon the whole of the evidence, to see whether, as a matter of law, there was any proof which could warrant a conviction of the relator, of the charge of neglect of duty, by absence from duty as a patrolman of the ninth precinct, from the 26th of October, 1861, to the 8th of January, 1863.

If there was no evidence of neglect of duty, — if the case was such at the close of the trial that it would have been erroneous to submit the question to the jury, were the like question before a jury in an ordinary action, — then the error is an error in law, and the conviction was illegal; it rests upon no finding of facts upon evidence tending to sustain such finding; but as matter of law the relator was entitled to be acquitted of the charge.

2. Upon the question thus presented, I think the defendants acted under some misapprehension.

On the 26th of October, 1861, they had removed the relator from the police force. Within the terms of the statute establishing the police district, his membership was an "office" held by him during good behavior, from which he could only be removed upon charges duly examined and substantiated. (Act of April 15, 1857, as amended April 10, 1860, chap. 259, § 15; Rules and Regulations for the Government of the Board of Police, § 10.)

The board having removed him from his office or membership of the force, he was not at liberty, and had no power, to serve therein. The action of the board in that respect had a higher authority, and more stringent operation, than a mere leave of absence. It was even more than a refusal to permit him to serve, — it made him incapable of serving.

It is argued, that the subsequent reversal of the order of removal by the Supreme Court shows that it was an illegal order, and that, being illegal, it is to be deemed void for every purpose, and, therefore, no excuse for not rendering

the service of a patrolman; that his omission to do so was neglect of duty.

The just inference from this claim would be, that the relator should have appeared each day at roll-call, and tendered himself ready to perform the duty of patrolman as the officers in charge might direct.

To give any force to this argument, it must be held, that the order of the board of commissioners was a nullity, which the relator not only had a right to disregard, but which it was his duty to disregard.

This is not so; it is entirely at variance with all safe precedent in the conduct and regulation of a body like that in question. The board of commissioners may, through inadvertence or otherwise, commit errors in the performance of their duties, and sometimes their orders may possibly be in excess of their legal powers, or be in the eye of the law illegal; but to hold, that orders made in the course of their administration in the government of the men under their control are a nullity and void whenever they are liable to be adjudged illegal, and that in such case it is the duty of the individuals of the force to set them at defiance, would tend to results in the failure of discipline and consequent insubordination which the defendants would, I am quite sure, be first to deprecate and denounce.

Absence from the force without leave is clearly neglect of duty. It is not easy to see how absence with the leave of the proper superior officer can be neglect of duty; the leave given renders it no longer the duty of the subordinate to be present, and of course there is in that respect no duty, and can be no neglect.

It may be proper and lawful to make the pay of patrolmen depend upon actual service, and to make every application for and acceptance of leave of absence a practical waiver of compensation for the period of absence. And there would seem to be no hardship in it; but it is not neglect of duty to act in accordance with the leave given. Here the charge against the relator was neglect of duty, and the absence consisted in an omission to do that which the order of his highest

superior practically prohibited, and there was no conflict of evidence or dispute as to the facts.    To my mind, the conviction of neglect of duty was not only against every sensible view of the meaning of the terms of the charge, but against the law.

For this reason I think it should be held erroneous and to have been properly reversed by the Supreme Court.

3. It is further objected that it was not lawful to award costs on the *certiorari*, and that in this the judgment of the Supreme Court was erroneous.

If the allowance of costs was discretionary, then we can not review the question.    But if, according to the established rules of law governing the subject, costs were not allowable, then this part of the judgment appealed from must be reversed.

It is quite clear, that, on a common law *certiorari*, costs were not recoverable by either party against the other.    It was fitting that this should be so, as in general the people were the plaintiffs in *certiorari*, and some tribunal or body exercising powers judicial or *quasi*-judicial was defendant; in favor of both good faith was to be presumed, and the errors alleged, and, as the case may be, committed, were errors in law only.    Where the relator, at whose instance the writ was sued out, was seeking to maintain some private right, property, or privilege, there might be reason for providing that he should be liable for costs in case of affirmance, but as to the defendant there would still be the same ground of immunity in case of reversal.

It is not according to one's sense of propriety or expediency that public officers, boards or judicial tribunals, should act under the peril of being charged with costs if they err in their judgment of the rules of law. (See *Law* v. *Rogers*, 11 Johns. 321; *Baldwin* v. *Wheaton*, 12 Wend. 263.)

Unless these costs are given by the Code, the judgment was in this respect erroneous.

Section 318 of the Code is relied upon as giving the court discretion at least to allow costs in such cases.    It provides that on the review of the decision of a court of inferior juris-

diction in a special proceeding, the review of the Supreme Court shall, for all purposes of costs, be deemed an action at law.

Was the decision of the defendants in this case made in a " special proceeding," as that term is used in the Code of Procedure? and is that board a court, as that term is there used?

Both questions must, I think, be answered in the negative.

Such was the decision of the like question in *Caldwell's case* (13 Abb. 405); and in *The People ex rel. Shipman* v. *Overseers* (6 How. 25.) The opinion of the general term in the eighth district, by Mr. Justice MARION, in *The People, etc.* v. *Heath and others* (20 How. 304), on the general question, seems to me quite conclusive, though in that case there was great plausibility in the argument that the decision then sought to be reviewed was in substance that of a court.

I think that part of the judgment appealed from, which awarded costs, should be reversed, and that in other respects the judgment should be affirmed, without costs on appeal.

CLERKE, J. If I understand this case, it was no offense, at the time of the conviction of the relator, for a member of the police to be absent with leave. The absence, which constituted the ground of complaint, was caused by the unlawful conduct of the commissioners themselves. In fact, they not only consented to, but compelled the absence of the relator.

His conviction was erroneous; and the order of the general term should be affirmed.

Judgment affirmed in accordance with the conclusions of Judge Woodruff.