THE PEOPLE, *ex rel.* JOHN MARTINO and others, *vs.* THE BOARD OF COMMISSIONERS OF PILOTS.

On a common law certiorari the Supreme Court is not restricted to the inquiry whether the court below acted within its jurisdiction, but may go further, and examine whether any error in the proceedings has been committed.

The board of commissioners of pilots, after having granted new licenses to individuals, authorizing them to act as pilots for one year, cannot revoke such licenses for an alleged violation of rules occurring previous to the date of the new licenses.

By considering applications for new licenses, and determining to issue such licenses to the applicants, the board will be deemed to have waived and forgiven all previous offenses.

ON the 25th day of August, 1868, the relators were summoned to appear before the board of commissioners of pilots, to answer to a complaint made by a member of the board, for several breaches of the regulations of the board alleged to have been committed at different times from the 16th of June to the 24th of August of that year.

Such proceedings were had on that complaint, that on the 1st day of December, 1868, the board revoked the licenses of the relators as Sandy Hook pilots, which action of the board was on the 22d day of December affirmed, on appeal to the commissioners.

After the complaint was made to the commissioners, and before adjudication thereon, the board of commissioners, before whom the complaint was pending, granted to each of the relators, severally, a license for the term of one year from date, which licenses were dated, respectively, September 6, September 13 and October 18, 1868. The licenses held by the relators at the time of the complaint having expired on those days respectively.

The relator sued out a common law certiorari, for the purpose of reversing the judgment of the board, by which the said licenses were revoked.

*E. Cooke*, for the relators. I. The commissioners have no power to revoke the license of a pilot, except for cause, to wit, malfeasance in office. (*Laws of* 1853, *pp.* 926, 927, §§ 23, 25.) It is obvious that the malfeasance or neglect of duty, to work a forfeiture of his license, must be laid at a time covered by the license. The acts charged against the relators in this case, and for which the licenses were revoked, having been committed, if at all, before the granting of the licenses, the judgment was erroneous, and should be reversed.

II. The granting of licenses to the relators after the commencement of the proceedings against them, being a judicial act, was a waiver and discontinuance of the proceedings. The judgment afterwards rendered was, therefore, as unauthorized as if no proceedings by complaint and notice had been instituted at all.

III. The notice was insufficient under the statute. It should specify the *nature* and *substance* of the complaint. (*Laws of* 1853, § 25.) This language calls for a statement

of such facts as constitute an offense. The notice is palpably deficient, for the reasons set forth in the notice of appeal. These defects are not cured by the reference to the by-laws. These by-laws are not public statutes, nor were they even brought to the knowledge of the relators. They should have been set forth so far as to show that the acts charged were a violation of them.

IV. The statute requires a complaint to be made in writing to the commissioners, as a foundation of the proceedings. (§§ 24, 25.) And then the commissioners are the court to try that complaint. A complaint and a court are thus provided for. It is clearly against the spirit of the statute to unite the two functions in one body. A member of the court cannot be complainant. The complaint, therefore, having been made by Mr. Blunt, one of the members of the board, is a nullity, and affords no valid foundation to the proceedings.

V. The commissioners of pilots had no power, nor could the legislature confer on them power to enact the by-laws claimed to have been violated. The commissioners do not hold their office from the people of the district, or by appointment from officers elected by the people. They are the creatures of the chamber of commerce and the board of underwriters—two corporations not chosen by or responsible to the people. In *Schuster* v. *The Metropolitan Board of Health,* (49 *Barb.* 454,) this court says: "The power of local legislation may be conferred upon municipal corporations or officers. But those upon whom the power is conferred, must hold their offices from the people of the municipality or district, or by appointment from officers elected by such municipality or district." Upon this principle this court restrained the board of health from enforcing ordinances made by themselves, Leonard, J., saying, "They are not officers holding, from a source permitting the exercise of local legislation to be conferred on them." In *The People* v. *The Metropolitan*

*Police Comm'rs,* (22 *How. Pr.* 52,) the court held that the board, for the reasons before stated, had no power to pass an ordinance regulating the licensing of cartmen and hackmen. And this decision was affirmed by the Court of Appeals.

VI. The commissioners of pilots were elected to office in violation of article 10, section 2 of the constitution of this State, and had no power to entertain the proceedings.

*Barney, Butler & Parsons,* for the respondents.

*By the Court,* CARDOZO, J. On a common law certiorari this court is not restricted to the inquiry whether the court below acted within its jurisdiction, but may go further, and examine whether any error in the proceedings has been committed. (*The People* v. *The Board of Met. Police,* 39 *N. Y. Rep.* 506.)

Looking into the record before us, I fail to find any reason or principle which will justify the board in revoking licenses issued in September and October, 1868, for an alleged violation of rules occurring between the 16th of June and the 24th of August, 1868. It matters not what motive may have induced the commissioners to grant the new licenses; the moment they were issued the relators became clothed with new rights, viz., the right to act as pilots for one year from September or October, 1868. The board must be assumed to have conceded, when they issued the new licenses, that there was no cause why the relators should not then be licensed, and as no cause has since occurred, the board had no ground to proceed against the relators as respects the new licenses.

If, in 1858, the relators had been licensed and had violated some rule, but ten years afterwards, in 1868, the board had seen fit to license them again, can it be pretended that the alleged violation would not be deemed to have been waived, and that the rights of the relators, under

the licenses, could not for that old cause be disturbed? The time elapsing between the alleged offense and the granting of the new license cannot affect the principle. Whether it be ten years or one day, the effect must be the same.

The justice of this view is also apparent from the fact that by section 11 the relators are obliged to enter into a recognizance, with two sureties, before getting their license. It would be very unfair to subject them to the labor and inconvenience of furnishing that recognizance, and then for the board to turn around and immediately revoke the license, for an old matter which the relators might reason-ably suppose had been forgiven when their application for a new license was considered and determined favorably to them by the board.

Without examining any of the other questions, on this one ground, I am for reversing the proceedings below.

Proceedings reversed.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Cardozo* and *Geo. G. Barnard,* Justices.]