THE PEOPLE OF THE STATE OF NEW YORK ex rel. JACOB SIEBERT v. THE BOARD OF POLICE COMMISSIONERS AND THE MAYOR, ETC., OF THE CITY OF NEW YORK.

*Police board of New York — power of to create offences, upon conviction of which a member may be removed from the force — when a conviction must first be had in a common law court — sect. 55 of chap. 335 of 1873.*

Under section 55 of chapter 335 of 1873, creating the board of police of the city of New York, and conferring upon it the right to remove members of the force, upon their conviction of certain offences therein prescribed, the board cannot try and remove an officer, upon the charge of conduct unbecoming an officer, in that he swore falsely when testifying as a witness upon the trial of another member of the force before the said board; to justify a removal for such an offence, the officer must first have been convicted of false swearing upon a trial before a jury, and in the ordinary courts of justice. (Ingalls, J., dissenting.)

Certiorari to the board of police commissioners of the city of New York, to review a judgment convicting the relator of conduct unbecoming an officer, and removing him from his office as a captain of the police force.

*A. J. Dittenhoefer* and *George Bliss*, for the relator.

*Charles F. MacLean*, for the respondent.

Potter, J. :

This case comes before the court upon a return to a *certiorari* issued to the board of police commissioners of the city of New

York, to review a judgment convicting the relator of a charge preferred against him and removing him from the office of a captain of the police force.

The charge upon which the relator was tried and convicted was as follows :

CENTRAL DEPARTMENT, }
New York, *November* 13, 1877. }

"*To the board of police of the police department of the city of New York* :

" I hereby charge Jacob Siebert, captain of the thirty-first precinct, with conduct unbecoming an officer.

" Specifications.—In this, to wit : On the eighteenth of October, last past, patrolman Mark Haggerty, of the thirty-first precinct, was on trial under charges before the board of police, and the said Jacob Siebert was a witness, and was sworn in the case. He was shown a written letter or communication, addressed to the board of inspectors of the fourth district, and was asked, " have you ever seen that letter before ? " to which he falsely replied, " no, sir ; " on being asked the question, " it has never `been shown to you before ? " he falsely replied, " no, sir ; " and he further falsely stated, " the letter I did not see." Whereas, in truth and in fact, he had seen the letter, and it had been shown to him, and he had read it and made comments upon it. The testimony of said Siebert was important and material to the issue in the case against Haggerty, and was willfully false, and in violation of rule 644 of the manual of the police department.

" GEORGE W. WALLING,

" Witnesses :                                              *Superintendent.*

" Mark  Haggerty, thirty-first precinct.

" Sergeant Cass, thirty-first precinct.

" Sergeant Larkin, thirty-first precinct.

" Daniel McLaughlin, thirty-first precinct.

" Inspector Thorne, fourth district.

" Henry Botts, thirty-first precinct."

No question is made by the relator, that he had not due notice of the charge and of the time and place of the trial, and of the orderly conduct of the trial.

The real question in this case is much more important than the manner of trial or the regularity of the proceedings.

It is a question of jurisdiction, and of the right of the respondent to create an offence, and to convict and punish a person charged with the commission of the offence so created. It is, in brief, a combination of legislative, judicial and executive powers in the respondent.

That state of things is no doubt necessary to secure an efficient organization of the police force of a large city, and the courts are not inclined to interfere upon slight occasion with its practical operation; but it seems to me the action of the respondent in this case involves questions of a very serious nature.

We will proceed to consider what offence the respondent has convicted the relator of, and whether the respondent has created or had the right to create or the right to try such offence. The charge preferred against the relator "is conduct unbecoming an officer," in this, that on a trial of one Haggerty, the relator, who was a witness, testified falsely in relation to having seen a certain letter referred to upon such trial.

The charge is, virtually, false swearing as a witness upon a trial. It is not with any violation or neglect of any duty, official or otherwise, arising from having seen or known of the letter or in anywise connected with it.

All the pertinent evidence upon the trial had sole relation to that issue, whether it was true or false that the relator had seen the letter, and that alone was the question decided by the respondent.

Now, has the board any power or right to create or declare the offence charged upon the relator? Whatever of power the respondent possesses in that regard is derived from chapter 335, Laws of 1873. That act creates the respondents and confers upon them such powers as they have. By section 41 of that act the government and discipline of the police department shall be such as the board may, from time to time by rules and regulations, prescribe.

All the rules and regulations must be for the government and discipline; beyond these purposes and objects the board cannot prescribe any rule or regulation. The rules and regulations can

have no binding force upon the police officers except while upon duty and acting officially.

Accordingly, it will be seen by reference to section 55 of that act, which contains a specification of the offences for which the board may inflict punishment, that except the first class (which we will notice further on) they all relate to the government and discipline of the police, and are for violations or neglects of their duties as policemen.

That section provides that the board of police shall have power, in its discretion, on *conviction* of a member of the force of any legal offence or neglect of duty or violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or *conduct unbecoming an officer, or other breach of discipline, to punish*, etc.

It will be observed, after specifically naming several offences against discipline and duty, it concludes with this language, "or other breach of discipline."

The design of these two sections is apparent and consistent. It is that the board of police may make rules of discipline and duty for the policemen, and try and punish those who break them.

It was not shown that the board had ever made a rule against false swearing or perjury by a policeman while testifying as a witness. The board probably did not contemplate that any policeman would or could testify *as policemen*, or while on duty as such. The board no doubt contemplated that if a policeman was called to testify as a witness in any controversy between another policeman and the board, or between a policeman and a citizen or the city, or between any other parties, he would testify as any other citizen, and under the same pains and penalties for false swearing.

The oath taken by the relator was, in no sense, an official oath as policeman, but was the same oath that was taken by other witnesses not officers on the trial referred to, and that oath required all the witnesses alike, whether officers or private citizens, to tell the truth in relation to the matters in issue.

The true issue upon the trial was, whether the relator had testified falsely or committed perjury upon the trial of Haggerty.

That was the question tried and decided by the respondent.    It is too far fetched and puerile to call the trial of so imporant a question a mode of ascertaining whether the relator had been guilty of conduct unbecoming an officer.

The respondents might, with quite as good a show of sense and propriety, have charged the relator with conduct unbecoming an officer, specifying that he committed murder or rape, some time and place when off duty, and have tried him for that offence. And this brings us to the consideration of the exceptional class of offences mentioned in said section 55, for which the respondents may remove policemen upon conviction.    Besides the power to try and remove policemen for a violation or neglect of duty, the respondents have the power to remove any member of the police force upon conviction of any legal offence.

By legal offences are meant crimes and misdemeanors enacted by the legislature, or existing at the common law.    When a policeman has been convicted of any of these offences by the tribunal, and in the manner prescribed by law, the respondent may remove for such conviction.

The idea that the board of police may try and convict persons charged with perjury or murder, arson, or other legal offence, is simply preposterous.    Those offences can only be tried by a jury, and in the mode provided by law.    Neither an act of the Legislature, or the consent of the accused, will justify a trial for these offences in any different manner.

The word " conviction," as used in this section, has the same meaning as when used in similar statutes.    It means a judgment of guilty pronounced against the accused by the tribunal, and in the mode prescribed by law.    (*Blaufus* v. *People*, 69 N. Y., 107; *Schiffer* v. *Pruden*, 64 id., 47.)

The conclusion is, therefore, that the respondents may, under section 55, *supra*, remove their subordinates, upon conviction, for two classes of offences : the one, offences against the laws of the land ; and the other, offences against the rules of discipline.    For the former class conviction must first be had in the courts of justice ; and, in the latter, in the court of the board of police.

The relator was convicted and punished for an offence belonging to the former class, in the court only competent to convict

for offences of the latter class. The conviction of the relator was without jurisdiction, and should be reversed.

BRADY, J.:

The differences between my brethren are irreconcilable, and create a doubt of the propriety of the judgment of the respondents. The charge made is sought to be established by proof that the relator swore falsely on a trial, on which he was examined as a witness, and as to a material fact, and the effect of the judgment against him must be that he did so testify, because of the character of the evidence against him. There can be no doubt of the power of the commissioners to try and punish an officer for falsehood in reference to his duties, because it would be embraced in the charge of conduct unbecoming such a person; but that is a very different thing from the charge of false swearing, which must be more serious in its consequences, if declared to have been committed. The line is close, I admit, but in such a case I think the doubt should be to the benefit of the relator, leaving the respondents to a further review, if one should be desired. I place my concurrence with Judge POTTER on the proposition, that the commissioners cannot investigate the charge of falsehood by resorting to proof of what the relator said when he was under oath as a witness, and then assailing it by testimony calculated to show that the statement made as a witness was false. The legal effect of the crime of perjury does not flow from such a trial; but the moral effect is the same while the element of the jury was not invoked and was absent.

INGALLS, J. (dissenting).

On the 13th day of November, 1877, the relator was a captain of police in the city of New York, and the following charges and specifications were preferred against him, and were served upon him:

" To the board of police of the police department of the city of New York:

" November 13, 1877.

" I hereby charge Captain Jacob Siebert, of the thirty-first precinct, with conduct unbecoming an officer.

" SPECIFICATIONS. — In this, to wit: On the eighteenth of October last past, patrolman Mark Haggerty, of the thirty-first pre-

cinct, was on trial, under charges, before the board of police, and the said Jacob Siebert was a witness, and was sworn in the case. He was shown a written letter or communication addressed to the board of inspectors of the fourth (4th) district, and was asked : "Have you ever seen that letter before ? " to which he falsely replied, "no, sir." On being asked the question, "it had never been shown to you before ? " he falsely replied, "no, sir ;" and further falsely stated, "the letter I did not see ;" whereas, in truth and in fact, he had seen the letter, and it had been shown to him, and he had read it and made comments upon it.

"The testimony of said Jacob Siebert was important and material to the issue in the case against Haggerty, and was willfully false and in violation of "rule 644" of the manual of the police department.

"GEORGE W. WALLING,

"Witnesses :                                        *Superintendent.*

"Mark Haggerty, thirty-first precinct.
"Sergeant Case, thirty-first precinct.
"Sergeant Larkin, thirty-first precinct.
"Daniel McLoughlin, thirty-first precinct.
"Inspector Thorne, fourth precinct.
"Henry Butts, thirty-first precinct.

"I admit due personal service on me of copies of the above complaint, charges, specifications and notice of trial.

"(Signed),          JACOB SIEBERT."

A trial was had, which was attended by the relator, assisted by counsel, and the following order was made in accordance with the decision of the board of police commissioners :

"Police Department of the City of New York,
"No. 300 Mulberry Street, New York,
"*February* 26, 1878.

"At a meeting of the board of police of the police department of the city of New York, held pursuant to law, and the rules and regulations of the said board, at the time and place above set forth.

"Present — William F. Smith, Dewitt C. Wheeler, Joel B. Erhardt and Sidney P. Nichols, commissioners ; the following among other proceedings were had :

340 PEOPLE ex rel. SIEBERT v. POLICE COM'RS.

First Department, March Term, 1880.

"*Police department of the city of New York.   In the Matter of charges against Jacob Siebert, captain.*

"It appearing to the said board of police that on the 13th day of November, 1877, charges of 'conduct unbecoming an officer,' against Jacob Siebert, captain, a member of the police force of the city of New York, were preferred to the said board in manner and form prescribed by law, and filed in the office of the chief clerk thereof; that a copy of such charges, with a notice in writing from the said chief clerk that said charges have been so preferred and filed, and that the said Jacob Siebert, captain, was required to appear and answer to such charges, at a time and place fixed by the said board, and mentioned in said notice, to wit : on the seventeenth day of January, at eleven o'clock A. M., at the said police department, No. 300 Mulberry street, in the city and State of New York, had been served on the said Jacob Siebert, captain, personally, at least two full days before the time fixed for appearing and answering, as above set forth in the manner required by law, and the rules and regulations of the said board.   The said Jacob Seibert, captain, having appeared and answered to said charges, at the time and place required in and by said notice, the said board, at such time and place publicly heard the proofs and allegations in support of said charges ; and the said Jacob Siebert, captain, having so appeared, and a full opportunity to be heard in his defence having been offered him, and due deliberation been thereupon had, it is found that the said captain Jacob Siebert is guilty of the charges so made as aforesaid ; whereupon, for the cause aforesaid, it is ordered and adjudged by the said board that the said captain Jacob Siebert be and is removed from the police force of the police department of the city of New York.   All the commissioners present voting aye.

"By order of the board of police.

"(Signed),          S. C. HAWLEY,
                              "*Chief Clerk.*"

The manner, and the extent to which such proceedings may be reviewed, is very clearly defined in *The People* v. *Board of Police and Excise, etc.* (69 N. Y., 409).   Chief Judge Church says: "Only errors in law affecting materially the rights of the

parties may be corrected ; and the evidence may be examined in order to determine whether there *is any competent proof* to justify the adjudication made." (See also *The People* v. *The Board of Police, etc.*, 39 N. Y., 506.) The relator was charged with, and tried for, conduct unbecoming an officer, viz. : in falsely stating under oath, as a witness, upon the trial of Mark Haggerty, that he had not seen the letter which is referred to in the specification. There was pertinent evidence in support of the charge produced to, and considered by the police commissioners, and upon which they based their decision dismissing the relator from service, and it cannot, we think, be successfully contended that their decision is unsupported by competent evidence. Such being the case, it is quite clear that this court cannot consistently, with the adjudications to which we have above referred, interfere and reverse the decision of the commissioners, even though as an original question it might incline to a different conclusion upon the merits of the entire case. It was the province of the board of police commissioners to hear, and weigh the entire evidence, and deduce a conclusion therefrom, and having done so in accordance with the rules and regulations by which they are governed their decisions must be regarded as conclusive. Certainly if the relator had been guilty of a false statement under oath, in regard to a matter connected with the management of the police department, of which he was a member, it constituted an offence which rendered him amenable to discipline. The board of police commissioners are authorized to exact from the members of the police force obedience to its rules, fidelity, and truthfulness, at least in regard to all matters connected with such department. We are not able to adopt the theory for which the counsel for the relator contends that a conviction, upon the charges preferred, could only be sustained by evidence which would authorize a conviction for perjury as defined by the Revised Statutes, or chapter 335, section 48 of the Laws of 1873. We are convinced that a statement which is untrue, and made under oath by a member of the police force, in regard to a matter connected with the business of that department, would constitute conduct unbecoming an officer, and subject the offender to punishment, although the evidence might be insufficient to justify a conviction for the crime of per-

342    PEOPLE ex rel. SIEBERT v. POLICE COM'RS.

First Department, March Term, 1880.

jury upon a trial under an indictment.    It could not have been the intention of the Legislature to require the police department of the city of New York to retain in its service a member of the police who had been guilty of conduct unbecoming an officer until the conclusion of a protracted litigation in the courts, for thereby the efficiency and reliability of that branch of the city government would be likely to become impaired.    We conclude that it was the intention rather to confer upon the board of police commissioners ample authority to investigate summarily all such charges, and if sustained by evidence to suspend or discharge the offender; and, as we have seen, the appellate tribunal will only inquire far enough to see that the conviction is in accordance with the law which authorizes the proceeding and is sustained by competent evidence, but will not substitute its judgment for that exercised by the commissioners in regard to the weight to be attached to the evidence, or the inferences to be drawn therefrom. The proceeding before such commissioners is not to be regarded as the trial of the relator for the offence of perjury, as defined by the statutes to which we have referred, but for conduct unbecoming an officer, in making a false statement under oath in regard to a transaction connected with the business of the police department; and the fact that such statement was made under oath only added to the gravity of the offence.    Mark Haggerty was on trial for a violation of the following rule :

" All letters or communications, anonymous or otherwise, in relation to any matter which concerns police duties or business, received by any member of the police force, must be, at the close of their respective tours of duty, immediately delivered to their respective captains, or officer commanding the precinct or squad. All such communications shall be forwarded with the next morning reports to the superintendent through the inspectors of their respective districts.    The date of receiving the letter and the substance thereof to be entered on the blotters kept at the respective precincts," and charged with omitting to return to the proper officer a letter which had come to the possession of Haggerty. And upon such trial Siebert stated on oath that he had not seen such letter previous to such trial, and evidence was produced to the effect that he saw the letter and commented upon the same

when it was in the possession of Haggerty. We cannot doubt but that the board of police commissioners would be authorized to discharge from service a member of the police force, who was shown to be guilty of immoral practices, which tended to impair the efficiency and reliability of such person for the service which he had undertaken to perform, even though such vicious conduct was not directly connected with the business of the police department. As an illustration, suppose a member of the police force should be shown, when off duty, to be engaged in promoting burglaries in a foreign county or State, could it be doubted for a moment but that the board of police commissioners would be authorized to discharge such person from service without regard to the manner in which he performed the duties assigned him as a member of the police force. Following the rule established by the adjudications, to which we have referred, we discover no sufficient ground which will justify a reversal of the order of the commissioners, and the same should be affirmed. If, upon further consideration, the commissioners shall become satisfied that they have dealt too severely with the relator, under all the circumstances, it is doubt less in their power to restore him ; but it is their province, and not that of the court, to accomplish such result.

Proceedings and judgment reversed.