(15 Misc. Rep. 273.)

PEOPLE ex rel. DOODY v. BISHOP et al.

(Superior Court of Buffalo, General Term.  December 23, 1895.)

POLICEMEN—REMOVAL—NEGLECT OF DUTY.

Where a member of the police force, who performs properly the duties of the branch of the service to which he is attached, is without authority assigned to another branch, in which different and more difficult duties are imposed on him, and he fails to perform such duties, such failure cannot be made a basis of charges to remove him from his office as doorman, though he attempted performance of the duty assigned without objection.  Titus, C. J., dissenting.

Certiorari by John Doody against Charles F. Bishop, mayor, and others, constituting the board of police of the city of Buffalo, to review proceedings by such board relative to the removal of relator from his office of doorman of police of such city.     Reversed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

Frederick Haller, for relator.
Charles L. Feldman, for defendants.

HATCH, J.    The relator was regularly appointed a doorman upon the police force of the city of Buffalo October 21, 1889, and had continued in such office at various stations of the police force until the 25th day of August, 1894, when he was assigned to duty at police headquarters, where he performed duties, in part, at least, in all respects similar to those he had theretofore performed.    While performing duty at headquarters, he was assigned by one Illig, the chief operator, in charge of the police telegraph and patrol signal system, to duty in that department.    This assignment was made upon request of one Tibbits, an operator therein, and seems to have been made for the purpose of instructing the relator in the management and use of the telegraph instruments and switchboard used in the department.    This work was more difficult of performance, and there was more of it than attached to the duties of doorman at a station house, and relator was not proficient therein.    While so employed he neglected, as the evidence tends to establish, to note certain calls from the various boxes of the system, and particularly neglected to notify the proper person of a patrol wagon call for the space of 12 minutes, and then only when the call was repeated.    For this dereliction of duty written charges were preferred by Illig to the board of police, with precise specifications, charging the aforesaid dereliction of duty.    A trial was had, and the board found the charges sustained by the evidence, and dismissed the relator from the Buffalo city police department.    The office to which the relator was appointed has been recognized in the various charters of the city of Buffalo for many years, and its duties have been specifically defined in the charter, and rules adopted thereunder for some years, and has been continued under the last revised charter of the city.    By section 187 of this charter the constitution of the police force is defined, and the status of the office of doorman is therein determined.    Section 194 authorizes the adoption of rules for the government and discipline of the force, prescribing their duties, providing for appoint-

ments and removals; and such rules are given the same force and effect as though they formed part of the enactment. Under this provision, rules were adopted defining the duties of doorman, and assigning his rank in the department. Nothing in section 187 determines the status of those persons who are denominated in the rules as attached to the police telegraph and patrol signal system. It is true that therein it is stated that "the term 'doorman' in this act covers all members of the force who were appointed under the name of operators." But this provision does not determine that the persons employed as operators in the telegraph and patrol signal system fall under the designation of doormen. The clause evidently refers to some persons who had been appointed as operators at some time prior thereto, and the office of doorman contemplates that they shall be operators. But the section does not disclose that the persons connected with the patrol and signal system were appointed as operators or doormen, nor is there any provision for their appointment except the general power contained in the section to appoint, "in addition to the police force," clerks and employés necessary for the proper working and management of the department; and those persons do not seem to have a defined status upon the police force, but are in addition thereto, and find no place in the defined rank of the force. The rules defining the duties of a doorman do not embrace the duties assigned to the employés of the patrol and signal system. Those duties are made the subject of a distinct and separate rule under the title of the "Police Telegraph and Patrol Signal System." That the board of police recognized this fact is disclosed by the examination of Illig by Commissioner Rupp:

Q. Is the work there harder than being a doorman in a station house? A. Yes, sir; more work attached to it. Q. Any ordinary operator should learn that duty in a week? A. Yes, sir. He may make a mistake once in a while, but not every day. Q. You would consider a man that could not learn that business in a week, after he had been a doorman, was not a competent person to have in the department? A. Yes, sir.

The charge is neglect of duty as a doorman, yet the specification is of neglect "while on duty in the patrol signal department." The board of police appoint the members of the police force by virtue of the charter, and by the rules they are required to inform the superintendent of police without delay of their action, and he makes all assignments to duty. In the case before us it appears from the return that the relator was assigned to duty at headquarters, by the superintendent, and it does not appear that any further assignment was made by him. The step which brought relator in contact with the department where his omission of duty occurred was ordered by Illig, upon request of Tibbits. We are referred to no rule or authority which vested Illig with any authority over doormen, or which authorized him to assign relator to duty at the switch board in the patrol system. There is no proof to establish that relator was guilty of any fault in the performance of his duty as doorman either at headquarters or elsewhere. We are therefore presented with a case where relator had a fixed status as doorman of police, and performed his duties properly. Without authority he was assigned to another

department, other and different duties were imposed upon him, which he failed to perform, and such failure is made the basis of charges to remove him from his office, wherein he was guilty of no dereliction of duty.    We are of opinion that this may not be done.    The qualifications which made him a competent doorman were evidently not sufficient to make him a competent operator of the telegraph and patrol system.    But to the latter position he was not appointed.    It would be a strange system which could remove a person from a lower grade of employment, which he was competent to perform, into a higher, where more skill and a higher degree of intelligence were required, and then make his failure or dereliction of duty in the higher grade the basis upon which to remove him from the lower service.    His failure to quickly learn the more difficult duties of the other station cannot be made the basis of removal from an office whose duties, so far as appears, he properly performed.    Nor does the fact that relator attempted performance of the duty assigned without objection change the condition.    He was placed there for instruction in the first instance, and may have been willing to be taught.    The trouble seems to be that either through lack of capacity, intention, or stupidity he did not learn fast enough.    But there is not sufficient evidence to show that he intended at any time to relinquish his office of doorman, and neither the board nor the superintendent of police, by any act, prior to the trial, evidenced any intention that he should.    We conclude, therefore, that no neglect of duty as doorman appears, and that neglect in another branch of employment, to which he was not appointed, under the circumstances of this case, cannot be made the basis of removal from the position to which he was appointed.    The order will therefore be that the proceedings be reversed, and set aside, and that the board of police reinstate relator in his office of doorman.    Costs awarded to the relator.

WHITE, J., concurs.

TITUS, C. J. (dissenting).    The writ of certiorari in this case issued to the defendants, constituting the board of police of the city of Buffalo, requires them to make return of all and singular the evidence and proceedings had on the trial of the relator for neglect of duty while a member of the police force.    It appears from the return that the relator was appointed doorman in 1889.    His duties were to receive and send messages from the station house where he was stationed, and to use the telephone in connection with the police department work.    In a general way he had charge of the electric appliances at his station, and in the absence of his superiors had charge of the station.    He was required to be proficient in telegraphy, and, from the nature of his duties, he must be familiar with such electric appliances as were in use by the department.    He was assigned to different stations, as the service required, and on the 25th day of August was assigned to duty at headquarters.    It does not appear that his duties there were different in character, or required more skill in the performance of them, than while on duty at the

station house. He was required to use the telegraph and telephone in receiving reports from officers and station houses, and to make and keep a record of them. It was his duty to O. K. slips, containing the reports of patrolmen from the different patrol boxes. He is charged with neglect of duty in failing, on December 4, 1894, "to answer twenty officers' report calls received by him from officers on post duty," and in failing "to obtain the names of twenty officers who. sent in officers' report calls." It is further charged that he received "a wagon call from box 5 at 3:28 o'clock p. m., and neglected to transfer said call to No. 1 patrol wagon station until twelve minutes later," when he should have immediately transmitted the message. It does not seem to be disputed that the board of police had sufficient evidence to warrant them in finding the charges sustained, but it is claimed that he was not able, from want of experience in the performance of the duties required of him, to meet the requirements of his changed position; and that the duty of a doorman, with the position he held, did not require of him that degree of skill necessary to perform the more difficult task to which he was assigned at headquarters; and hence it is claimed he cannot be removed for insufficient knowledge and skill in those duties to which he was not originally appointed, and which, in the position of doorman, he would not have been required to perform. It seems to be unnecessary in disposing of this case to pass upon this question. Whether the board of police can appoint a man to a position requiring little or no skill in which he performs well all duties required of him by the position, and then assign him to a position requiring much greater skill, or a different grade of education and training, it is not necessary to decide; but there seems to be reason in the position that a man fit and qualified for a particular duty to which he is appointed should not be required to perform other duties to which he was not appointed, and for which he might not be qualified, and thus subject him to removal for failure through lack of training or skill in their performance. It is by no means clear that he was not sufficiently qualified and skilled in his duties to perform them. The nature of his work was the same as he had been doing at the station houses, and it cannot be seen how a man skilled in the use of the telegraph and telephone, as the relator must have been, should fail to perform the duties assigned him at headquarters. There is no evidence that it required any different knowledge or skill. According to his own testimony, he understood the system of receiving calls and recording them, and was familiar with the patrol signal system. His only claim is that he is bothered in getting the names; that, if he had time to get the names, he could do the work as well as any man there. He does not appear to have made any complaint to the superintendent that he could not keep up with the work, or that he required more practice before he was equal to the duties of the position. He continued voluntarily and of his own accord in a position with the duties of which he was entirely familiar, and yet claims he could not keep up with the work. The sufficiency of the relator's excuse for failure to perform his duty rested wholly in the sound discretion of the board of police. They had authority and jurisdiction to try the relator. Laws 1891, c. 105,

§ 192. I do not think their determination reviewable in this proceeding. If the board was not satisfied with his excuse for failure to properly perform his duties, it cannot be said they should have been. He may have been careless when care was required. He may have been animated by some motive to have the work neglected, that others might be charged with his neglect. There is some evidence of ill feeling between him and his associate employés, and the whole question was for the board to pass upon and determine, and not for the court on review. People v. Board of Police, 39 N. Y. 506; People v. French, 110 N. Y. 494, 18 N. E. 133; People v. Board of Fire Com'rs, 82 N. Y. 358. The weight of the relator's evidence, its force and tendency, can be much more accurately ascertained by the board than by the court. Its members are familiar with all of the circumstances surrounding the case. They are familiar with the duties of the position which the relator occupied; they knew his capacity and fitness to efficiently perform those duties; and, unless they have stepped outside their authority, and acted without evidence, their conclusion will not be disturbed. People v. French, 7 N. Y. St. Rep. 253; People v. McLean (Sup.) 14 N. Y. Supp. 578. From what has been said it follows that the proceedings and decision of the defendants should be affirmed, but without costs.