HILL and ALDRICH *vs.* THE MOHAWK AND HUDSON RAIL-ROAD COMPANY.

Appraisers appointed to value land taken by a rail-road company are not author- ized to appraise the land of an individual with a reservation of easements and privileges to the owner. They must appraise the land at its actual value.

Therefore where the inquisition stated that the award of damages was " based on the supposition, and made on the condition and with the understanding" that the owners of the land might open a street across the rail-road; *held* on certio- *rari* brought by the owners that the appraisement was illegal, and that the inquisition should be set aside.

CERTIORARI to a "jury of appraisers," formed pursuant to the act entitled " an act concerning the Mohawk and Hudson Rail-Road Company," passed April 16, 1838, (*Stat. p.* 193, § 5,) to review a verdict or appraisement of the value of certain lands belonging to John J. Hill and Adam Aldrich, taken by said rail-road company for the purposes of their track, and for the damages, &c.

The return stated that the jury were empanneled and sworn on the 29th day of August, 1844; that among the lands which they were required to appraise, was a vacant piece of ground belonging to Hill and Aldrich, on the west side of Broadway, in the city of Albany, which they particularly described; that the proper notice having been served, they had, on certain days mentioned, viewed the land and heard the evidence of the par-

ties, and that on the sixth day of September, 1844, they award-
ed to Hill and Aldrich $1,800, as well for the value of the land
described and proposed to be taken, as for the damages the
owners would sustain by taking the same. A certificate of ap-
praisement, with a map of the premises, is referred to and an-
nexed to the return, which describes the premises and states the
amount awarded. The certificate contains the following pas-
sage : " This award is based on the supposition and made on
the condition and with the understanding that Hill and Aldrich,
the owners, are to be at liberty at any time to lay out and open
a street on the north side of their lot, across said road, and to
remove any fences or obstructions to such street, and also to
drain under said road provided that the grade of said rail-road
is not affected thereby, nor the running, nor operation of the
said road interfered with or impeded in any way." The return
having been filed,

*R. W. Peckham,* for Hill and Aldrich, moved to set aside
the inquisition or certificate of appraisement. He argued that
it was evident that the jury had not awarded the full absolute
value of the land, as by the statute they were required to do.
(*Stat.* 1838, *p.* 197, § 8.) They had undertaken to compensate
the owners, in part, by conferring upon them certain reserva-
tions and rights out of the property taken. This was unau-
thorized by law and the reservations were void. He referred
to *The Queen* v. *The Co. for the S. Holland Drainage,*
(8 *Adolph. & E.* 429.)

He said it was the practice of the English courts to set aside
the inquisitions of juries of appraisement in rail-road and simi-
lar cases; (*The Queen* v. *The Manchester and Leeds Rail-
way,* 8 *Adol. & E.* 413 ; *The same* v. *The Trustees of the
Swansea Harbour Co. id.* 439 ;) and that our own courts had
often exercised the same jurisdiction. (*Starr* v. *The Trustees
of Rochester,* 6 *Wend.* 564 ; *Baldwin* v. *Calkins,* 10 *id.* 179 ;
*Rathbun* v. *Sawyer,* 15 *id.* 452.) He admitted that the courts
would not interfere with a county tax, or any general public
tax, or ordinarily with a street assessment ; but this was not

for want of jurisdiction but from considerations of public inconvenience, as in such cases the whole rate would be brought up by the *certiorari* upon the complaint of a single person, whc was but one individual of a large class of persons taxed. (*Commonwealth* v. *The Blue Hill Turnpike Co.* 5 *Mass.* 420; *The People* v. *The Supervisors of Allegany Co.* 15 *Wend.* 205; *The People* v. *The Mayor, &c. of New-York,* 2 *Hill,* 9; *Matter of Mount Morris Square,* id. 25.)

*M. T. Reynolds,* for the rail-road company. There is nothing in the return or in the certificate to show that the jury made any deduction on account of the matters which have been referred to. They were directed to award the value of the land, and it should be intended that they did so. What they have added as to the rights of the owners, as they understood them, if unnecessary, was merely surplusage, and does not vitiate the other parts of the certificate.

*By the Court,* BEARDSLEY, Ch. J. Two modes are indicated in the act of 1838, by which this corporation might acquire title to the land required for the new route of their railway; *first,* by voluntary sale and conveyance, and *secondly,* by appraisement and payment of the value as assessed. (*Laws* 1838, *p.* 194, §§ 4 *to* 11.) An appraisement was required where there was an inability to convey, a refusal to sell, or a disagreement as to the price of the land. (*Id.* § 4.) In every such case the corporation was to present a petition to a judge, "describing the lands so required," and stating sundry other matters; upon which petition proceedings were to be taken before the judge for the appointment of a jury of appraisers. (§§ 5, 6.) The appraisers were to view the premises so proposed to be taken, (§ 8,) and assess the value thereof and the damages the owners might "sustain by taking their lands, by injury to buildings, and in the construction of said road, without any deduction on account of any real or supposed benefit which such owner" might derive from the construction of the road. (§§ 8, 4.) A certificate was to be made by the appraisers, describing the

land so proposed to be taken and which was appraised by them; and on proof of payment of the amount awarded, &c. the corporation was to become the owner of said land in fee simple. (§§ 8, 11.)

The petition presented to the judge in the present case is not before us, so that we are unable to learn from that what land in particular was therein described. But the appraisers were not only bound to appraise the land described in the petition, but also, themselves, to describe in their certificate, the land valued by them. The latter has been done by them, and in a way which precludes the supposition that, in the petition, the land was described as subject to any reservation, qualification, or condition whatever. It seems to me the papers before us show clearly that the petition was such as the act requires; but if there was doubt on this point, we could not assume that the land was described in the petition in a way not authorized by the statute.

The object in reserving an easement to the original owners of this land must have been to procure its valuation at a reduced sum, and thus save expense to the corporation. All this was very proper to be adjusted by the parties, and might be mutually advantageous to them; but I do not see that the statute authorizes land to be taken, compulsorily, on any such terms or conditions. The corporation is to become seized in fee simple of the land, (§ 11,) and the act requires the full value to be assessed. (§ 4.) I therefore think these appraisers plainly erred in annexing the qualifications and condition as specified in their certificate. They must have supposed the right thus assumed to be reserved to the owners of the land, was beneficial to them, and consequently the land must have been assessed below its full value, in the estimation of these appraisers. It may be that the reserved right of these owners would be important to them, but of that they must be allowed to judge for themselves. Neither the corporation, or the appraisers, can compel the owners to accept the benefit thus proffered. The appraisers should have given the full value, for upon that con-

dition only was there any authority under this act to acquire the land by a compulsory proceeding.

I think the certificate and award of the appraisers should be set aside and vacated.

WHITTLESEY, J., dissenting. In most of the legislative acts making .provision for the appropriation of lands by rail-road corporations, the lands to be appropriated are specifically described by the order of some judicial tribunal, and the damages which the owner will sustain by the appropriation of the lands *so* described are to be assessed by a jury or board of appraisers. In such case if the lands had been described in the judicial order by metes and bounds, without reserving any easements to the owner, and the jury or appraisers had qualified or clogged their appraisement with certain easements or rights to be enjoyed by the owners, in addition to the pecuniary damages, I think it would be apparent that damages in such case were assessed upon wrong principles, and the assessment would be set aside. (*Queen* v. *Co. for S. Holland Drainage*, 8 *Adol. & E.* 429.)

The act under which the present assessment is made has not precisely such provisions. There is no preliminary judicial order in this case made necessary. The act (*Sess. Laws of 1838*, 193, § 5,) provides that the corporation shall present a petition to a county judge, "describing the lands required" by said corporation. This is all the provision made for the description of the land, which the rail-road corporation are to take and which the jury of appraisers are to appraise. In the proceedings before us we are not informed how the lands are described in the petition. We do not know whether they are described merely by metes and bounds, or whether any easements or privileges are contemplated to be reserved to the owners or not. We do not therefore know what precise lands the jury are called upon to appraise. The same and the two following sections make provision for the appointment of a jury of appraisers. By the 8th section it is made the duty of such jury to view the premises "so proposed to be taken," (that is,

proposed by the petition,) and to hear evidence, and they are to assess the value of the land *so proposed to be taken,* and the damages the owners thereof may sustain, &c.

By the 9th section, such jury of appraisers are to make a cer tificate "specifying with all convenient certainty the several tracts of land *proposed to be taken* by the said corporation," with the names of the owners, amount of damages awarded, &c. By the 11th section, the rail-road corporation upon pay-ing or depositing the damages awarded, are to become seized and possessed of *the lands described in the certificate of the appraisers.*

Thus all these several consecutive provisions refer to the pe-tition of the corporation for a description of the lands proposed to be taken, and this petition is not returned to us so that we can know how the lands are described. The corporation are, at the termination of the proceedings, to become seized and possessed of the lands described in the certificate of the ap-praisers. When we look to this description as contained in the return to the certiorari, we find a description by metes and bounds, and then after mentioning the damages awarded, de-scribing certain easements, rights or reservations as excepted from the lands thus described. Is not this a part of the thing described to be taken? Do not these reservations and excep-tions form part of, and qualify, the previous description of the lands by metes and bounds? If the corporation are to become seized and possessed of the lands described in the certificate of the appraisers, must they not take these lands thus described subject to the easements, reservations and exceptions mention-ed in the same certificate?

It is very evident that the corporation can take no larger interest than that described in this certificate; and they will therefore take subject to the easements and reservations men-tioned in said certificate. That is, so far as such easements and reservations are concerned, the owner does not part with, but retains his title, and the corporation takes the remainder of the interest in the land, that is, the right subject to such easements and reservations, and it is this interest which is ap-

praised.   If it was intended that the corporation should take the lands free from any such easements and reservations, it is the corporation that is injured by this departure from the original intention, and not the owners.   They have not been injured, for this particular portion of or interest in the real estate has not been taken from them.   For what has been taken payment has been awarded, and it is not competent for us to say that the damages so awarded are insufficient.

It is urged that the jury exceeded their powers in excepting such easements and reservations.   It is possible they did ; but I do not know that fact with certainty.   How do we know but what the land was described in the petition of the company as proposed to be taken by them subject to such easements and reservations ?   As the jury are in effect required to describe the lands in their certificate as they were described in the petition, we are perhaps bound to suppose that they have done so ; and therefore to believe that the corporation proposed to take these lands subject to such easements and reservations.   It seems to me that we are bound to believe this, or that there was a mutual agreement between the corporation and owners at the time of the appraisal of damages which is incorporated by the jury into their certificate qualifying the interest which the corporation was to take.   I do not think that in either of such aspects there is any error to be corrected, and am of opinion the proceedings and verdict of the jury should be affirmed.

Inquisition set aside.