THE PEOPLE, *ex rel.* John B. Haskin, *vs.* THE BOARD OF
SUPERVISORS OF THE COUNTY OF WESTCHESTER.

The correction of errors in the proceedings and determinations of inferior
political jurisdictions is matter of legal, and not of equitable, cognizance.

There is a wide and radical distinction between bringing the record of the pro-
ceedings of an inferior body before the court, for the purpose of having
them reviewed and passed upon directly by the courts, and either reversed
or affirmed, and bringing an original action, founded on some alleged error
in the proceedings of such body, and demanding judgment, not upon errors
in the record, but upon the allegations of error, in the complaint.

The office which a relator performs is merely that of instituting a proceeding
for and in behalf of the people.

The people themselves being the plaintiffs, in a proceeding by mandamus, it
is not of vital importance who is the relator, so long as he does not offi-
ciously intermeddle in a matter with which he has no concern.   The reason
applies, with equal force, to the question as to who is a proper relator in a
writ of *certiorari.*

If a tax is erroneous as to an individual, he has his remedy by writ of error
or *certiorari.*   And if the writ can be used to correct an error where the
interest of one individual is injuriously affected, there can be no sound
reason why it should not be invoked when the rights of a community are
invaded.

The public have the same interest that a public act, like the laying of a tax,
shall be properly performed, as they have that a public officer shall do his
duty; and if a mandamus can be sued out, on the relation of a tax-payer,
to compel assessors to levy a tax, the same reasoning will sustain a writ of
*certiorari* to correct an erroneous tax.

It is no objection to such a writ that it removes the records of more than one
road opened by the legislature, under different laws passed at different
times, and by different commissions; that the parties are different, the sub-
jects are different, the errors assigned are different, and the judgment may
be different; where there is but one warrant, and one assessment upon which
such warrant is based, sought to be reviewed.

Although the relator in a *certiorari* has made more assignments of error than
the facts warrant, or some improper parties are made defendants, it is proper
for the court to quash or correct such part of the proceedings sought to
be reviewed as are illegal, and affirm such as are legal, provided one is
independent of the other.

The court will, in the exercise of a sound discretion, review the proceedings
to be brought up by the writ, or give judgment quashing the writ, and will
consider the case upon its merits if the public interest will be thereby
subserved.

On a common law writ of *certiorari,* the inquiry is not limited to the question

whether the inferior tribunal had jurisdiction of the subject matter, and its proceedings and judgment were within that jurisdiction; but the court will examine the case upon the whole evidence, to ascertain whether any error has been committed.

APPEAL by the relator from an order made at special term, superseding a *certiorari.*

*By the Court,* PRATT, J. This is an appeal from an order made at special term, superseding a common law writ of *certiorari,* allowed to review and correct certain items alleged to have been illegally included in the tax levy and warrant to be issued against the town of West Farms, in the county of Westchester.

The relator is simply a resident and tax-payer in the town of West Farms. It is claimed, from this fact, that the people have no standing in court, and the following cases are cited as sustaining such view: *Hale* v. *Cushman,* (6 *Metc.* 425;) *Doolittle* v. *Supervisors of Broome Co.,* (18 *N. Y. Rep.* 155;) *Roosevelt* v. *Draper,* (23 *id.* 318.)

It is apparent, from the slightest examination of these cases, that they sustain no such doctrine, but are based upon an entirely different principle, that has no application here. Each of these cases were bills in equity, filed by a private person, in his own name, to enjoin public officers from doing certain acts; or, in other words, the result sought was to compel public officers to litigate with them questions in which the plaintiffs had no interest which was not common to the whole community. The bills were all dismissed, upon the ground that the plaintiffs did not make out a case under some acknowledged head of equity jurisdiction. They sought to litigate a question on the equity side of the court, which was purely of legal cognizance.

It has always been held in the English courts, and in this country, with some improper exceptions, that the correction of errors in the proceedings and determinations

The People *v.* Supervisors of Westchester.

of inferior political jurisdictions is matter of legal, and not of equitable, cognizance. The courts hold there is a wide and radical distinction between bringing the record of the proceedings of an inferior body before the court, for the purpose of having them reviewed and passed upon directly by the courts, and either reversed or affirmed, and bringing an original action, founded on some alleged error in the proceedings of such body, and demanding judgment, not upon errors in the record, but upon the allegations of error, in the complaint. In the former case the judgment is final and conclusive, and enures to the benefit of the whole community. In the latter the judgment only settles the rights of the particular plaintiff, and opens the door to excessive litigation ; and hence the rule that the courts will not extend equitable jurisdiction over the acts of inferior bodies, and allow every one to come in and litigate. There are some exceptions to this rule, but it is not necessary to discuss them in this connection. I acknowledge not only the binding force of the rule, but the sound reasons upon which it is based. (25 *N. Y. Rep.* 312.    14 *id.* [4 *Kern.*] 540.)

Mr. Haskin was a proper person for relator. The office which a relator performs is merely instituting a proceeding for and on behalf of the people. The distinction between a tax-payer who acts as relator in a legal proceeding, in which all the inhabitants of a political division of the State have a common interest, and a suit by a private individual to redress a wrong personal to himself, is clearly recognized in the case of *The People* v. *Halsey,* (37 *N. Y. Rep.* 344.) The court there says : " The difference between a case where an individual acts as relator· or representative of the people, to redress a public wrong by mandamus, and one where it is sought to accomplish the same result by an individual, in an action in his own name, is strikingly apparent." Inasmuch as the people themselves are the plaintiffs, in a proceeding by mandamus, it

is not of vital importance who the relator should be, so long as he does not officiously intermeddle in a matter with which he has no concern. The reason applies with equal force to the question as to who is a proper relator in a writ of *certiorari*. It is conceded that if a tax is erroneous as to one individual, he has his remedy by writ of error or *certiorari*. (37 *N. Y. Rep.* 511. 40 *id.* 154.) Yet if all the people of a town, or other political division, are erroneously taxed, no one can have a remedy, except the attorney-general sees fit to institute proceedings to correct such error. In other words, if public officers attempt to rob one person by an illegal tax, it can be prevented by the courts; but if they include a whole community in the scheme, they thereby secure immunity from investigation. That there is no such rule of law, is apparent. If the people's writ of *certiorari* can be brought in requisition to correct an error, where the interest of one individual is injuriously affected, there can be no sound reason why it cannot be invoked when the rights of a community are invaded. The public have the same interest that a tax shall be proper as to a town or aggregation of individuals, as it has that it shall be right as to one person. It may also be said that the public have the same interest that a public act, like the laying of a tax, shall be properly performed, as they have that a public officer shall do his duty; and if a mandamus can be sued out, on the relation of a tax-payer, to compel assessors to levy a tax, the same reasoning will sustain a writ of *certiorari* to correct an erroneous tax. (15 *Barb.* 255. 4 *id.* 9. 1 *Salk.* 146. 24 *Wend.* 249. 5 *Den.* 206. 8 *Pick.* 218. 1 *Metc.* 122. 2 *id.* 225. 15 *Pick.* 243. 5 *Gray*, 451. 6 *Cush.* 306. 19 *Pick.* 298.)

In my judgment, the proceeding is correct in form, and the proper remedy.

The second objection is, that the writ removes the records of more than one road opened by the legislature,

The People *v.* Supervisors of Westchester.

under different laws and by different commissions, and passed at different times; the parties are different, the subject is different, the errors assigned are different, the judgment may be different.

It is a sufficient answer to this point to state that there is but one warrant, and one assessment upon which such warrant is based, sought to be reviewed. It is the record of the tax assessment for the town of West Farms alone that is sought to be brought before the court for review. It is the tax record that is alleged to be erroneous; and the fact that there is more than one error, or that more than one statute is involved, is immaterial, provided the proper parties are summoned, so that the alleged erroneous record is produced before the court.

But suppose the relator has made more assignments of error than the facts warrant, or that some improper parties are made defendants; it is proper for the court to correct or quash such part of the proceedings sought to be reviewed as are illegal, and affirm such as are legal, provided one is independent of the other. (13 *Mass. Rep.* 433. 13 *Pick.* 195. 5 *Mass. Rep.* 420, 424.) The order superseding the writ was appealable from the special to the general term. (*Wells* v. *Jones*, 2 *Abb. Pr. Rep.* 20.) The case referred to in 19 *N. Y. Rep.* 531, has no application, as that case simply holds that the order of affirmance made at general term was not appealable to the Court of Appeals.

The question now is, whether this court, in the exercise of a sound discretion, will review the proceedings to be brought up by the writ, or give judgment quashing the writ. Inasmuch as this proceeding rests in the sound discretion of the court, we should grant or refuse the process as the ends of justice and the public interest may require. I think the public interest will be subserved by considering the case upon its merits.

The error complained of in the tax is independent, and

unconnected with the other items making up the assessment. No part of the alleged erroneous tax has been collected, while the other taxes, or, in other words, the proper taxes, less the items alleged to be erroneous, are in the course of collection. No litigation can ensue from a judgment for the relator, from the fact that the erroneous items will be expunged. On the other hand, if the writ is quashed, each party who deems the tax illegal can and will resist its collection. I cannot see that the defendants, or the people of the town, can be injured, but I do think they will be benefited, by a decision upon the whole merits. Upon the ground, therefore, that the relator has a *status* in court, and that there should be a return by the respondent to the writ, as to Berrian avenue, and in order that the case may be considered upon its merits, the order at special term, superseding the writ, should be reversed.

The limits in which this court will exercise its power in reviewing the proceedings and determination of inferior tribunals, has been the subject of much discussion and some contrariety of opinion; but the rule, as best settled by the Court of Appeals, seems to be, " that it is proper for the Supreme Court to review all questions of jurisdiction, power and authority of the inferior tribunal to do the acts complained of, and all questions of regularity in the proceedings; that is, all questions whether the inferior tribunal has kept within the boundaries prescribed for it by the express terms of the statute law, or by well settled principles of the common law." (39 *N. Y. Rep.* 88.) The language above quoted might seem to limit the inquiry of this court to the question whether the inferior tribunal had jurisdiction of the subject matter, and whether its proceedings and judgment were within that jurisdiction; yet in another case, decided in September, 1868, the Court of Appeals holds that it is proper to examine a case brought before the court by the common law writ of *cer-*

*tiorari,* upon the whole evidence, to ascertain whether any error has been committed in the proceedings before such inferior tribunal.    (*The People* v. *Board of Police,* 39 *N. Y. Rep.* 506.)    The Supreme Court of this district, in the case of *The People* v. *Board of Assessors of Brooklyn,* (39 *N. Y. Rep.* 81,) examined alleged errors in the mode and principle of assessment for taxes, and ordered a correction in particulars not going to the entire assessment, but making an abatement therefrom.

It appearing, therefore, that the relator has a standing in court, and that the commissioners of Berrian avenue have made no return, the order made at special term, superseding the writ, must be reversed, and the respondents required to make a complete return.

Order of BARNARD, J., superseding writ of *certiorari,* reversed, with $10 costs to the appellant.

[KINGS GENERAL, TERM, February 14, 1870.    *J. F. Barnard, Gilbert* and *Tappen,* Justices.]