People ex rel. Miller agt. Board of Police Commissioners.

# COURT OF APPEALS.

THE PEOPLE *ex rel.* AUGUSTUS MILLER, appellant, agt. THE
BOARD OF POLICE COMMISSIONERS OF THE CITY OF NEW
YORK, respondents.

*Certiorari to review proceedings and judgment of removal of relator from the
office of sergeant of police.*

Upon a common-law certiorari the supreme court is not restricted to the
jurisdiction of the inferior tribunal over the parties and the subject-
matter, but it is the duty of the court in addition thereto to examine
the evidence and determine whether there was any competent proof of
the facts necessary to authorize the adjudication made, and whether in
making it any rule of law affecting the rights of the parties has been
violated.

A member of the police force of the city of New York can only be
removed by the board of commissioners after written charges have
been preferred against him, and after the charges have been publicly
examined into, upon reasonable notice to him, and in such manner as
the rules and regulations of the board of police may prescribe.

On the 5th day of February, 1875, notice of the charge, together with a
copy of the charge and specification, was served upon the relator, which
notice stated that the trial would take place at the office of the board of
police on the 10th day of February, 1875. The relator admitted due
personal service of the charge, specification and notice of trial, and he
also signed the following admission: "I hereby admit the within
charge as specified, and waive trial thereon." On the eighth day of
February, two days before the trial, the relator delivered to the com-
missioners a sworn statement, denying his guilt, recanting and with-
drawing the admission previously made, revoking the waiver of trial,
denying and fully answering the charges, and fully explaining the rea-
son why, and the circumstances under which the admission was made.

*Held,* that the board of commissioners were guilty of error in refusing to
consider the explanatory affidavits submitted by the relator, and in
removing him from his office on the strength of an admission which he

never intended to make, and which he withdrew before the day appointed for the trial and examination of his case. There was no trial or examination, and the dismissal was illegal.

THIS cause was heard at the first department, May general term, 1876, before NOAH DAVIS, P. J., CHAS. DANIELS and ABM. R. LAWRENCE, JJ. The facts fully appear in the opinions.

*Louis J. Grant*, for relator.

*Chas. F. McLean*, for respondents.

DAVIS, *P. J.* — In *The People ex rel.* agt. *Smith*, GROVER, J., said : "Whatever may have been the conflict of authority heretofore upon the question whether, upon a common-law certiorari, the court can inquire into any thing beyond the jurisdiction over the parties and subject-matter, it must now be regarded as settled in this state that it is the duty of the court, in addition thereto, to examine the evidence and determine whether there was any competent proof of the facts necessary to authorize the adjudication, and whether, in making it, any rule of law affecting the rights of the parties has been violated" (*People ex rel.* agt. *Smith*, 45 *N. Y.*, 776, 777 ; *People* agt. *The Board of Metropolitan Police*, 39 *N. Y.*, 506 ; *The People* agt. *The Assessors of the City of Albany*, 40 *N. Y.*, 154). An examination of the published reports of the court of appeals since the 45 *N. Y.*, fails to disclose that these cases have been reversed. There can be no doubt that the board of police commissioners had jurisdiction of the subject-matter and of the person of the relator. He was a member of the police of the city. A charge had been lodged against him on the 4th day of February, 1875, in due form, charging him with neglect of duty. This charge was accompanied with a specification stating the particular offense, which, if true, was just ground for removal On the fifth day of February, a formal notice of the charge

with a copy of the same and of the specifications, were served upon him personally, whereby he was notified and required to answer the charge in accordance with and in the manner required by the rules and regulations for the government of the police force; and that his trial upon said charge would take place at a meeting of the board to be held at the office, No. 300 Mulberry street, in the city of New York, on the 10th day of February, 1875, at one o'clock P. M., and continued, as ordered by the board, until concluded. The relator admitted, in writing, due personal service of all these papers; and he also, afterwards, signed a separate paper, indorsed on said notice, charges and specifications in these words:

" I hereby admit the within charge as specified, and waive trial thereon."

○ On the eighth day of February following, he made a statement, addressed to the board, verified by his oath, and accompanied by the affidavits of four other persons, which substantially denied the charge and specification, and which, if true, ought to have secured his acquittal. On the tenth day of February, the board met for the trial of the relator at the time and place designated in the notice, and, at one o'clock of that day, the relator was called but failed to appear, and thereupon the board, as stated in their return, proceeded to hear, in the absence of said Miller (the relator) the proofs and allegations in support of said charges, to wit, the hereinbefore mentioned admission of said Miller of the truth of said charges. On the twelfth day of February, the relator presented his petition asking leave to withdraw his admission and for a trial of the charge; and at a meeting of the board on the 16th of February the petition was denied, and the board proceeded to pronounce a formal conviction and judgment of removal. It is clear that no other evidence was produced against the relator than his written admission of guilt, and the question is, whether that was sufficient evidence, on his failure to appear and answer at the trial, to

justify his conviction. I am at a loss to see why the admission was not evidence. His subsequent verified denial, and the affidavits accompanying the same were competent evidence of the truth of the facts stated in them. The commissioners were not bound to receive nor treat them as such. It was the relator's duty to have appeared on the trial, which he had ample opportunity to do, and to produce his witnesses for examination and cross-examination in due form. It does not appear that, if he had appeared and asked for the examination of his witnesses, and for a complete trial, without regard to his admission, the board would not have allowed it. Even on such appearance, the admission would have been evidence against him proper to be considered, but we cannot judicially say that the board, notwithstanding the rigid rules they subsequently applied to his case, would not have allowed him *then* to withdraw or explain the admission, and to disprove the charge by the production of his witnesses. By not appearing he was in default, and sufficient evidence was given by his admission to convict him on such default.

The subsequent refusal to open the default and let him into a formal trial upon the withdrawal of the admission seems to have been severe and unnecessarily harsh, but it was an appeal to the conscience and discretion of the commissioners (not to ours), and if their denial seems to the court unreasonable, that is no legal ground for its reviewal on certiorari. It was a matter of practice in the order and detail of the proceedings, and not reviewable by us. The subsequent efforts to get a re-hearing, and the refusals to grant the same, though not to be commended, are not in our province to review. The questions which we can review are the jurisdiction of person and subject-matter, and whether at the trial competent evidence was given tending to prove the charges, and sufficient to justify a conviction; and unless we can hold that a written admission of the truth of the charge and specification signed by the party accused is no evidence, or that it has become no evidence because a contra-

dictory statement and separate affidavits have been presented by the accused previous to the day of trial, but which he does not appear to maintain on the trial, we are forced to the conclusion that it is our duty on this writ to affirm the proceedings. It is not to be inferred that I intend to justify the manner in which the commissioners dealt with the relator, or even that I dissent very much from the views which my brother LAWRENCE has expressed concerning the proceedings. What I mean to say may be better expressed in the language of WOODRUFF, J., in *The People* agt. *The Board of Police* (39 *N. Y., at page* 517), that to hold that "matters of mere detail in the order or mode of proceeding, not violating any rule of law to the prejudice of the party, and matters which are clearly submitted to the judgment or discretion of the inferior tribunal, where the evidence presents a case for its exercise, can be so reviewed" (by certiorari), would be in conflict with all the previous adjudications, and produce great inconvenience and embarrassment. I think the judgment of the board of commissioners must be affirmed, but, under the circumstances, without costs.

DANIELS, J., concurred.

LAWRENCE, J. (dissenting). — Prior to and until the 16th day of February, 1875, the relator was a sergeant of police in the city of New York, but on that day the respondents rendered a judgment removing him from his office. This certiorari has been brought to review the proceedings of the respondents, the relator in substance alleging that there was no investigation into nor examination of the charges. For a proper understanding of the case it will be necessary to recite somewhat at length the facts as they appear from the return filed by the respondents. In the return it is stated that on the 4th of February, 1875, a charge was made against the relator by an inspector of police, which charge, as detailed in the accompanying specification, was to the effect that the relator had been guilty of neglect of duty in this, to wit: "That said sergeant Augustus Miller was sitting in the back

room of the liquor store on the south-east corner of Sixtieth street and Eleventh avenue, coat and cap off, playing cards with roundsman Raynor, patrolmen Smith and Leavy." That on the 6th day of February, 1875, notice of the charge, together with a copy of the charge and specification, was served upon the relator, which notice stated that the trial would take place at the office of the board of police on the 10th day of February, 1875. The relator admitted due personal service of the charge, specification and notice of trial, and he also signed the following admission : "I hereby admit the within charge as specified and waive trial thereon." It also appears by the return that on the 8th day of February, 1875, two days before the trial, the relator delivered to the commissioners a sworn statement showing, among other things, that the bar tender of the liquor store, on the evening in question, hailed the relator while on duty and stated that Mr. Maher, the keeper of the store, wished to see him on important business; that Maher had been unfriendly to the relator, and that the relator not wishing to go into the store alone on account of such unfriendly relations rapped for officer Leavy, and upon being joined by him relator told Leavy that he wished him to go along, that Maher wished to see relator; that subsequently, just as the relator and Leavy were going into Maher's, they met officer Smith whom the relator also directed to accompany them; that the three police officers went into a rear room where Maher was sitting at a table alone; that Maher had commenced to tell the relator of the trouble he had had with some cattle drivers at the new cattle yards opposite to his store when roundsman Raynor came in, and that relator stated to him that he had called the other two men into the place; that within two minutes inspector McDermott came into the room and ordered them all out; that he (relator) said to the inspector, "This is a put up job, is it not?" to which the inspector made no reply. The relator concludes this statement by submitting the case to the board, but states that he distinctly denies that he is guilty of

the charges made against him and asserting that the other officers were there by his request and orders; and he denies that they were engaged in playing cards as alleged by McDermott. Accompanying the statement of the relator are the affidavits of officers Raynor, Smith and Leavy, and of Thomas Maher, which corroborate the statement in most, if not all, of its essential features and which go to show that there was no liquor drank and that there was no card playing by the relator or the other officers. All of these papers were laid before the respondents on the 8th day of February, 1875, as is admitted by the return. On the tenth day of February, as the return states, the relator was called but failed to appear "and the said board of police thereupon proceeded to hear, in the absence of said Miller, the proofs and allegations in support of said charges, to wit, the hereinbefore mentioned admission of said Miller of the truth of said charges." It further appears that on the 12th day of February, 1875, the relator submitted a formal petition to the board in which he stated that he " specifically and emphatically denied all and each and every of said charges as specified by McDermott, excepting only the fact that I was in the store mentioned by him, but my presence there I can fully and satisfactorily explain," &c. In this petition the relator also states that the first intimation of the charges, as specified in the notice, was when the notice was served upon him. He also avers that thereupon he waited upon one of the members of the board and explained fully and fairly to him the fact only of being in the store, and thereupon the commissioner (in the language of the petition) "*in my interest, as he stated, advised me to sign the formal printed waiver of the trial and admission of the charge.*" The relator thereupon prayed that the board would permit him to withdraw and revoke his admission and waiver of trial and would give him a speedy trial, &c. This petition was verified by the oath of the relator. His counsel also, on the 13th of February, 1875, by note informed the clerk of the commissioners that he had been retained and requested

that notice of the trial might be served on him. The board, on the sixteenth of February, denied the petition of the relator and found the relator guilty and dismissed and removed him "from the office of sergeant," &c. On the same day a formal judgment of removal seems to have been entered in the minutes of the board in which, while it is recited that the board had publicly heard the proofs and allegations in support of said charges, it is also stated that the said Miller having admitted the truth of said charges, and a full opportunity to be heard in his defense having been afforded to him and due deliberation being thereupon had, it is found that the said Augustus Miller is guilty of the charge so made as aforesaid.

There was subsequently to the making of the return by which these facts appear an order made by the special term of this court directing the respondents to file a further return to the writ containing a petition of the relator dated April 20th, 1875, and addressed to the respondents, and an affidavit verified by the attorney of the relator April 19th, 1875, together with any further proceedings and papers which the respondents might choose to put therein, without prejudice to the right of either party to object to the materiality of any of the papers returned. This petition, after reciting the facts, merely prays that the board will reconsider their previous judgment; and the affidavit of the relator's attorney, Mr. Grant, which accompanied such petition, went to show that notice of the meeting of the 16th of February, 1875, at which relator was removed, had been promised to the relator's counsel, and that it had also been agreed by the police commissioners that the petitioner should be allowed to withdraw his waiver, and should be permitted to be heard in his defense. Both these papers are incorporated in the additional or further return. There were also returned affidavits made by Mr. Hawley, the chief clerk of the respondents, and by commissioners Voorhis and Disbecker. The affidavits of Messrs. Voorhis and Hawley tend

to contradict the affidavit of Mr. Grant, the relator's attorney, in respect to the statements relative to any agreement to hear the relator or to notify his counsel. The affidavit of commissioner Disbecker explains the interview between him and the relator on the fifth of February, the day on which the charges were served, and the alleged advice to the relator was given. The affidavit seems to me, however, only to show that the relator admitted that he had been found in a liquor saloon while on duty, and that he could not deny that fact. It should be observed that the relator, in his petition on which the writ of certiorari was issued herein, states that when commissioner Disbecker advised him to submit the case, he stated to the commissioner that he would not like to do so without making a statement, to which the commissioner replied, "you can make any statement you like;" and, as has already been stated, a statement under oath was made to the commissioners on the eighth of February, two days before the time appointed for the trial, which statement forms part of the first return. The main question in this case is as to the power of this court to interfere in this matter. Formerly it was held that upon a common law certiorari the supreme court could not examine further than to see whether the inferior tribunal, whose proceedings were sought to be reviewed, had kept within its jurisdiction as to parties and subject-matter. Latterly, however, this strict rule has been departed from, and the law, as it is at present administered on common-law writs of certiorari, is stated by justice GROVER, in the case of "*The People* agt. *Smith* (45 *N. Y.*, 776, 777) to be as follows:

" Whatever may have been the conflict of authority heretofore upon the question, whether upon a common-law certiorari, the court can inquire into any thing beyond the jurisdiction of the tribunal over the parties and the subject-matter, it must now be regarded as settled in this state that it is the duty of the court, in addition thereto, to examine the evidence, and determine whether there was any compe-

tent proof of the facts necessary to authorize the adjudication made, and whether in making it any rule of law affecting the rights of the parties has been violated."

The application of these principles to the case at bar very clearly leads, in my opinion, to the conclusion that the judgment of the respondents in removing the relator should be reversed. Before the case came on for trial, the relator submitted to the respondents a written statement, verified by his oath, explaining the circumstances under which he entered the liquor store of Maher, and which statement, if true, exculpated the relator from the charge of neglect or dereliction of duty. This statement (verified by the relator's oath) was corroborated by the affidavits of all the other officers, and also by the affidavit of Maher. It is quite apparent from the return that the commissioners did not examine, or if they did, that they gave no weight whatever to these affidavits nor to the relator's statement. It is also quite apparent from the return that the relator was held to and convicted upon his alleged admission of the truth of the charge made against him. Although it is recited in the judgment that the board has publicly heard the proofs and allegations in support of said charges, it nowhere appears that a single witness was examined before the board in support of the charges, and the recital is coupled with the further recital that the said Augustus Miller having admitted and answered said charges, &c., and the said Miller having admitted the truth of said charges. The whole proceeding is based upon the alleged admission of Miller, an admission which he explained and qualified, and, as I think, justified, two days before the matter first came on for trial. To say that a party accused, who has been led into an admission involving the sacrifice of the most sacred rights, cannot be allowed to qualify, modify or explain that admission at any time before it has been acted upon seems to me to be a mockery of justice. Throwing, then, out of view all the matters upon which the respondents are in conflict with the relator, and

conceding that no promise was given to the relator that he should be heard after he presented the petition of the 12th of February, 1875; conceding even that commissioner Disbecker did not make the statement to him which the relator claims he did; yet, as the fact remains, that the relator withdrew his admission, or qualified it, before the trial, the respondents were guilty of error in refusing to consider the explanatory affidavits submitted by the relator, and in omitting to give to them the weight to which they were entitled as uncontradicted evidence.. This is not, so far as appears by the record, a case in which there was conflicting evidence as to the guilt of the party accused. As the record stands on which the judgment of the 16th of February, 1875, was rendered, there is simply an unverified charge by McDermott on the one side, flatly contradicted by the affidavits of the relator and the other affiants on the other. It is not a case where the court is called upon to pass upon the mere weight of evidence. It is a case of no evidence on one side against positive evidence on the other. I am well aware of the rule that where there is evidence to support the judgment of the tribunal below, the court will not, on a certiorari, undertake to determine that such judgment is against the weight of evidence (*The People* agt. *Sanders*, 3 *Hun*, 17, 19, *and cases cited*). If I correctly understand this case, no such feature is presented here. The rule which obtains in the case of summary convictions may, it seems to me, be well applied in this instance. The question in such cases is, whether, conceding the jurisdiction of the magistrate, and the regularity of the proceedings, there was any evidence to warrant the conviction (*Mullins* agt. *People*, 24 *N. Y.*, 399). Here, throwing out the alleged admission of the relator, there was no evidence against him. It is true that a written charge had been made against him by inspector McDermott. That charge does not, however, appear in any manner whatever to have been verified. McDermott does not appear to have been examined as a witness in support of the charge;

no other party appears to have been examined as a witness in support of the charge. The relator, having under oath denied that he was guilty of the charge, and having shown, as I think (under oath), that all which he ever intended to admit was that he was present in Maher's liquor store under circumstances which were consistent with his innocence, there is not in this case, so far as I am able to discover, any evidence which warrants his conviction. If the respondents sought on the tenth day of February to hold the relator upon his supposed admission of guilt, they were bound in justice to give him the benefit of the qualification which he attached to his admission on the eighth of February. They were not authorized to accept part of his statement and reject the remainder. As the case stood on the tenth of February, the relator in effect said to the respondents, "it is true that on the 5th inst. I signed a paper which apparently admits my guilt. Such was not my intention. I intended only to admit my presence in Maher's liquor store. I deny that I am guilty of the charge brought against me by McDermott, with the exception that I was present in the liquor store. My presence there I can justify, and I am prepared to do so if afforded the opportunity." In the face of this, the commissioners found him guilty of the offense charged, on the ground that he had admitted that he was guilty. Until the maxim "*nemo tenetur prodere seipsum*" is obliterated from our law, the procedure of the respondents cannot, in my judgment, be upheld. One other observation should be made. It is utterly immaterial, as I view the case, as to what the negotiations and interviews between the relator's counsel and the respondents were after the 10th day of February, 1875. Whether the relator after that date made application to formally withdraw his admission of the fifth of February or not; whether he was promised a hearing or not — what was said or done in relation thereto is immaterial. The one· bald fact stands out that the relator was removed from his office on the strength of an admission which he never

intended to make, and which he withdrew so far as it was capable of being construed as the respondents sought to construe it, before the day appointed for the trial and examination of his case. I have examined the cases referred to in the brief submitted by the respondents' counsel, and find nothing in them which militates against the views above expressed. If those cases are to be considered as holding that the action of such bodies as the police board is not liable to review by this court, they cannot be upheld under the recent decisions of the court of appeals above referred to (*See* 45 *N. Y.*, 777, *and cases cited by* GROVER, *J.; Mullins* agt. *The People*, 24 *id.*, 399). The judgment of the police commissioners should, I think, be reversed, with costs.

Judgment of commissioners affirmed.

From this decision an appeal was taken to the court of appeals, who reversed the judgment of the supreme court and the order of the board of police commissioners, judge ALLEN delivering the following opinion:

ALLEN, *J.* — The relator, as a member of the police force of the city of New York, could only be removed by the board of commissioners after written charges had been preferred against him, and after the charges had been publicly examined into upon reasonable notice to him, and in such manner as the rules and regulations of the board of police might prescribe (*Laws of* 1873, *chap.* 353, *sec.* 41). Whether the board had prescribed any general rules for the government of the force or for the examination of charges against members of the force, or, if so, what were the rules and regulations, does not appear.

The relator was entitled to a compliance with the statute, and to hold office until, after a public examination of charges made, he had been found guilty of some offense which should be deemed sufficient to warrant his removal. Charges were preferred and notice given of a time and place of hearing as

required by the statute, but there was no examination of the charges, and no inquiry into their truth by the board of police commissioners, either public or private. He was dismissed upon a written admission of the truth of the charges and a consent to waive a trial, not made to or in presence of the board, and without proof of the genuineness of the signature, except expressed by the statement, under oath, of the accused, in which he recanted and withdrew the admission, revoked the waiver of a trial, denied and fully answered the charges, and fully explained the reason why and the circumstances under which the admission was made. The admission was not before the board with the assent or by the authority of the relator, and the second statement was an answer to the charge and called for an examination, as if the admission had never been signed. The accused was not estopped by this admission, which was not made to the tribunal having jurisdiction, as his answer to the charges and his consent to waive a trial was revocable. The board do not profess to have acted upon the waiver, but claim to have examined into the truth of the charges, and held them proved by the admission. When the board of police convened on the day assigned for the hearing they had before them the withdrawal of the consent to waive the examination, and a demand of a trial, and the verified answer of the accused, corroborated by the affidavit of every other person present on the occasion, except the complainant. The accused did not appear in person or by counsel, and the board were therefore authorized to proceed and publicly examine into the charges and inquire into their truth in his absence, and *ex parte*. Instead of doing this, they ignored the documentary evidence before them and the revocation of the consent to waive the examination, and the sworn denial of the accused, and adjudged him guilty upon a paper not legitimately before them, taking it as the answer to the charge, notwithstanding the protestation of the accused that it was not his answer and was untrue. There was no trial or examination, and the dismissal was illegal.

People ex rel. Miller agt. Board of Police Commissioners.

Judge LAWRENCE has covered the case in his dissenting opinion, which obviates the necessity of any further discussion of the question.

It was important to the discipline of the force that the trials of members upon charges should be strictly legal, as that the authority of the law, when properly exercised, should be upheld.

For the reasons assigned by judge LAWRENCE, the judgment of the supreme court and the order of the board of police commissioners should be reversed, and the proceedings remitted for such further proceedings as may be lawful.

"All concur; FOLGER and EARL not voting."