1. TAXATION—ASSESSMENTS—NATIONAL BANK STOCK—INJUNCTION.
   Rev. St. U. S. § 5219, prohibiting an assessment of national bank stock
   at a greater rate than assessments against other moneyed capital, does
   not authorize suit to enjoin the collection of taxes assessed on the stock
   of a national bank in excess of taxes assessed on land of equal value,
   where the remedy at law provided by the statute was adequate, though
   such remedy may have been lost by lapse of time.

2. SAME—CERTIORARI.
   1 Rev. St. c. 13, tit. 2, art. 2, § 17, provides that all real and personal
   estate shall be assessed at its full and true value.  Laws 1885, c. 311,
   amending Consolidation Act, § 821, gives a right to review an "illegal"
   assessment by certiorari.  *Held* that, if failure of tax assessors to follow
   the rule as to the valuation of real and personal property is not an "ille-
   gal" assessment, within the statute, so as to give a right to review by cer-
   tiorari, a common-law suit for certiorari will lie to review an assessment,
   where there has been a gross violation of such rule by the assessors.

3. SAME—PARTIES.
   A national bank may bring certiorari in its own name to review an
   assessment on stock belonging to its stockholders, who have instructed it
   not to pay the tax in so far as excessive under the statute requiring no-
   tice of assessment to be given to the bank, and not to the stockholders,
   and requiring the bank to pay the tax from dividends, and Consolidation
   Act, §§ 819, 820, giving parties "affected" and "aggrieved" a right to review.

Injunction by the Mercantile National Bank of the City of New
York against the mayor, aldermen, and commonalty of the city of
New York and others to enjoin the collection of certain taxes.   Dis-
missed.

Brownell & Patterson (Brown & Wells, James W. M. Newlin, Silas
B. Brownell, and George S. Coleman, of counsel), for plaintiff.

John Whalen, Corp. Counsel (James M. Ward and David Rumsey,
of counsel), for defendants.

LAUGHLIN, J.   This is an issue of law arising on the defendants'
demurrer to the complaint on the ground that it appears on the face
thereof that the same does not state facts sufficient to constitute a
cause of action.   The plaintiff is a banking corporation, organized
and existing under the acts of congress authorizing and regulating
national banks.   It is doing business in the city of New York, and its
capital stock is $1,000,000, divided into 10,000 shares, held by more
than 100 persons, some of whom are residents of other states.   In
1896 this stock was assessed at $143 per share, making a total valua-
tion for the purposes of taxation of $1,430,000.   The total assessed
valuation of property in New York county for that year was $2,106,-
484,905, of which $1,731,509,143 was on real estate, $82,624,193 was
on bank stock, and $292,351,569 was on other personal property.   The
plaintiff alleges that all real estate in the county of New York was de-
liberately and intentionally assessed for the year 1896 at not more
than 60 per cent. of the actual value thereof, while the shares of stock
of the plaintiff were deliberately and intentionally assessed at their

full or actual value, after making proper allowance for the plaintiff's real estate, and that, if all real estate had been assessed at its actual value, as required by the statute, the amount which the stockholders of the plaintiff would have been required to pay would not have exceeded 65 per cent. of the amount so assessed upon their stock.

In the month of April, while the tax rolls were before the commissioners of taxes and assessment, and open to examination and correction, the plaintiff, on behalf of its stockholders, duly applied to such commissioners, and demanded that the assessments on said stock be reduced to $66\frac{2}{3}$ per centum of the value as then assessed, in order to equalize the same with the assessments on the other property on the same rolls.    Such application was denied, and the assessments were confirmed as originally levied.    The assessments upon real property were not changed to the statutory rate.    The rolls were delivered to and confirmed by the board of aldermen, and the state and city taxes were spread according to such valuations.    After the assessment rolls were delivered to the receiver of taxes, he presented a bill to the plaintiff for the taxes upon its capital stock, aggregating $21,541.70. The plaintiff, in behalf of its stockholders, before any interest accrued on such taxes, duly tendered to the receiver of taxes the sum of $14,002.11, being 65 per centum of the taxes, and demanded that he apply the same pro rata on the taxes on such stock, and offered to keep the tender good.    The receiver of taxes declined to accept any sum less than the full amount of the taxes, and is proceeding to enforce payment thereof by levy upon and sale of the shares of stock or other personal property of the shareholders.    The plaintiff alleges that many stockholders have notified it not to pay the taxes levied against their stock; that, if the collection of the excess of said taxes over 65 per centum thereof be not enjoined, it will be subjected to great loss of standing and credit, and will sustain other injuries; that its franchises will be greatly impaired in value by reason of the premises; that, if it should pay the taxes from dividends declared in favor of its shareholders, it will be subjected to a multiplicity of suits by them; that it has no adequate remedy at law; and that it should be permitted to maintain this suit in equity to compel the receiver of taxes to accept 65 per centum of the taxes, that being the amount heretofore tendered, and to enjoin the collection of the taxes in excess of said amount.

It is not alleged in the complaint, but it was conceded on the argument, that the taxing officers followed the statutory rule, and assessed all personal property at its full and true value; and such would be the presumption, in the absence of an allegation to the contrary.    The case was argued and submitted on the theory that this demurrer sufficiently presents the question as to the jurisdiction of a court of equity; and, since all parties desire a decision on the merits, it will be so given.

Section 5219, Rev. St. U. S., authorizes the legislature of each state to determine and direct the manner and place of taxing national bank stock, but provides that such taxation "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking

association owned by nonresidents of any state, shall be taxed in the city or town where the bank is located and not elsewhere."

Section 312 of chapter 409 of the Laws of 1882—the state statute authorizing the assessment of both state and national bank stock at the time this assessment was made—provides that such stockholders "shall be assessed and taxed on the value of their shares of stock," and that such shares shall be included in the valuation of their personal property; and it contains the same provisions, in effect, with respect to the rate and place of taxation, as are contained in the federal statute hereinbefore quoted. The state standard of valuation of real and personal property for the purposes of taxation has always been substantially the same. It is as follows:

"All real and personal estate liable to taxation shall be estimated and assessed by the assessors at its full and true value, as they would appraise the same in payment of a just debt due from a solvent debtor." 1 Rev. St. c. 13, tit. 2, art. 2, § 17, re-enacted in Laws 1896, c. 908, § 21 (General Tax Law).

Sections 814, 817, and 818 of the consolidation act, and section 9, art. 2, tit. 2, c. 13, 1 Rev. St., merely prescribe the duties of the deputy tax commissioners in New York City, and of assessors elsewhere, respectively, and the form and manner in which the assessment rolls shall be prepared, and it was not intended thereby to change the rule of valuation from that already quoted.

There is no provision of the national or state constitution which requires that taxation shall be equal in both real and personal property, and there is no federal statute imposing such condition as to taxation of national bank stock. People v. Mayor, etc., 4 N. Y. 419; McMahon v. Palmer, 102 N. Y. 176, 6 N. E. 400; Id., 133 U. S. 660, 10 Sup. Ct. 324; Magoun v. Bank, 170 U. S. 295, 18 Sup. Ct. 594; Mercantile Nat. Bank v. Mayor, etc., 28 Fed. 776; Id., 121 U. S. 138, 7 Sup. Ct. 826. Notwithstanding its undoubted right to prescribe a different rule of valuation for real estate from that for personal property for the purposes of taxation, our legislature has not seen fit to do so; but, with certain exceptions, not here involved, it has expressly provided for equality of taxation on real and personal property.

The demurrer admits that the taxing officers have deliberately and intentionally disregarded and departed from the statutory rule, thereby naturally increasing the taxes upon all personal property. According to recent well-considered cases in the federal courts, a tax based on a willful general violation of a statute requiring equality of taxation is illegal, as to the excess over the amount that would have been assessed, had the statute been borne in mind and followed by the taxing officers, and, if there be no other remedy, the collection of such excess will be enjoined. Railroad & Telephone Cos. v. Board of Equalizers, 85 Fed. 302, 315–320; Railway Co. v. Taylor, 86 Fed. 168. affirmed as to this point 31 C. C. A. 537, 60 U. S. App. 166, and 88 Fed. 350; Cummings v. Bank, 101 U. S. 153; Stanley v. Supervisors, 121 U. S. 550–552, 7 Sup. Ct. 1234.

It does not necessarily follow, however, that a court of equity is the proper tribunal to afford relief. To now enjoin the collection of the excess in this case would equalize the taxes between the plaintiff's stockholders and the owners of real estate, but would produce in-

equality of taxation as between such shareholders and all others assessed for personal property, to the prejudice of the latter. If, therefore, the parties aggrieved had an adequate remedy at law, they should have resorted to such remedy, when the violation of the statute could have been completely corrected, and a court of equity may not intervene, even though, through misconception of the law or lapse of time, they have now lost such remedy. If the collection of general taxes were enjoined to any great extent, the city and state governments would be unable to meet their obligations, and thereby serious public inconvenience or loss would be occasioned. If applied for in time, ordinarily, in such cases, an appropriate, adequate remedy is afforded by certiorari for the protection of every constitutional or statutory right for the protection of which the aid of the courts may be invoked. Public policy, therefore, forbids the granting of injunctions in tax cases, unless facts are shown clearly bringing the case under some acknowledged head of equity jurisdiction, as the necessity for the intervention of the court to prevent a multiplicity of suits or irreparable damage, where there is no adequate remedy at law, or to remove a cloud on title. Mutual Ben. Life Ins. Co. v. Supervisors of New York, 2 Abb. Prac. (N. S.) 233; Railroad Co. v. Smith, 39 Hun, 337; Susquehanna Bank v. Broome Co. Sup'rs, 25 N. Y. 312; Railroad Co. v. Nolan, 48 N. Y. 514; U. S. Trust. Co. v. City of New York, 144 N. Y. 492, 493, 39 N. E. 383; Messeck v. Supervisors, 50 Barb. 190; New York Life Ins. Co. v. Supervisors of City of New York, 4 Duer, 192; Pacific Mail S. S. Co. v. City of New York, 57 How. Prac. 511.

Section 819 of the New York City consolidation act, in force at the time this assessment was made, provides as follows:

"The commissioners [meaning of taxes and assessments] may, at any time before the second day of April in each year, increase or may diminish, at any time before the closing of the books of annual record on the first day of May in each year, the assessed valuation of any real or personal estate in said city, as in their judgment may be necessary for the equalization of taxation; but they shall not increase such valuations after said books are open for correction and review, except upon notice being given to the party affected by such increase, twenty days before the closing of said books."

Section 820 of the same act provides that "any person considering himself aggrieved by the assessed valuation of his real or personal estate" may apply to the commissioners of taxes and assessments to have the same corrected.

It thus appears that the commissioners of taxes and assessments were vested with ample authority, at the time their attention was drawn to their violation of the law by the plaintiff in behalf of its stockholders, to correct their error by increasing the valuation of all real estate to the statutory rate, and, if that was impracticable, on account of the difficulty of giving notice to all owners of real estate, then by reducing the valuations of personal property to the percentage of valuation adopted as to real estate, and thereby secure the equalization of taxation required by the statute under which they were acting.

Section 821 of the consolidation act originally provided that:

"A certiorari to review or correct on the merits any decision or action of the commissioners under either of the two preceding sections shall be allowed

by the supreme court or any judge thereof, directed to the said commissioners, on the petition of the party aggrieved."

This provision authorized the court to review the judgment of the commissioners on all questions of inequality in valuations between the real or personal property of one person and the real or personal property of others, and to equalize such valuations, whether they were over or under the statutory rate. Probably on account of the congested condition of litigation in the city of New York, and the amount of litigation, without merit, wherein it was sought to review the judgment of assessors as to equality of valuations under the statutory rate, the legislature, by chapter 311 of the Laws of 1885, amended said section 821 of the consolidation act so as to read as follows:

"A certiorari to review or correct on the merits any decision or action of the commissioners, under either of the preceding sections, shall be allowed by the supreme court or any judge thereof, directed to the said commissioners, on the petition of the party aggrieved, but only on the grounds, which must be specified in such petition, that the assessment is illegal, and giving the particulars of the alleged illegality, or is erroneous by reason of over-valuation."

In the case of People v. Coleman (Sup.) 4 N. Y. Supp. 417, it was held, under this amendment, that the right to review an assessment for the purposes of taxation is confined to the grounds of illegality and overvaluation. The question in that case was whether the relator could, in a certiorari proceeding, offer evidence as to the value of its property which was not assessed higher than the statutory rate, and as to the value of other property, and thereby obtain a reduction in its assessment to equalize it with others. The referee held that the amendment to section 821 was constitutional, and deprived the court of jurisdiction to grant such relief, and the general term affirmed on the opinion of the referee.

The court of appeals in People v. Barker, 155 N. Y. 324, 49 N. E. 884, expressly refrained from passing on this constitutional question, on the ground that it was not necessarily involved, although it had been considered below and was argued on the appeal. While the constitutionality of the act has, therefore, been settled so far as this court is concerned, it is not so free from doubt that the amendment should be given an interpretation sufficiently broad and liberal to preclude the court from granting a writ of certiorari to review the action of the taxing officers in deliberately and intentionally violating the statutory rule as to valuations. The facts so distinguish this case from that of People v. Coleman, supra, that I do not regard it as a precedent on the question now presented. The amendment expressly authorizes a review by certiorari where the tax is illegal. While, ordinarily, that word in the tax laws has been understood and construed as relating to a tax illegal in toto, yet, under the federal decisions, these taxes are illegal as to the excess. But, if these assessments were not illegal, within the contemplation of that amendment, I think a common-law writ would lie to review such a gross violation of this statutory duty by the taxing officers.

The decisions of the court of appeals are not in harmony on the question as to the extent that the proceedings of boards of assessors

and other tribunals of inferior jurisdiction can be reviewed for errors or irregularities by a common-law writ of certiorari; but I think it may safely be said to have been authoritatively settled that questions of jurisdiction, or relating to the rule or principle upon which the taxing officers proceeded, could be fully presented and reviewed by such a writ, and their proceedings could be annulled, and new assessments ordered in accordance with the statutory rule.   People v. Board of Assessors of City of New York, 39 N. Y. 88, 89;  People v. Board of Assessors of City of Albany, 40 N. Y. 154, 158;  People v. Commissioners of Taxes and Assessments, 67 N. Y. 521;  People v. Ferguson, 38 N. Y. 89;  People v. Board of Police Com'rs, 52 How. Prac. 289;  People v. Board of Police, 39 N. Y. 506; People v. Smith, 45 N. Y. 776, 777;  Swift v. City of Poughkeepsie, 37 N. Y. 516.

In the absence of fraud, or the adoption, on application, of a wrong rule or principle in fixing the valuation of property for the purposes of taxation, prior to the enactment of chapter 269 of the Laws of 1880, there was no remedy against an overvaluation, or a valuation higher proportionately than other property on the same roll.   That act, the provisions of which were re-enacted in the tax law of 1896, affirms the common-law remedy by certiorari in cases of illegal taxes, and extends the remedy to cases of errors of judgment on the part of assessors, in estimating the value of property, by which it is either valued higher than the statutory rate or higher proportionately than other property on the same roll.   The conclusiveness of the return on those questions is destroyed, and evidence may be taken.   Davies, Tax'n, 15, 16;  In re Corwin, 135 N. Y. 249, 32 N. E. 16;  People v. Gray, 45 Hun, 243.

I believe that the amendment of 1885 was designed to withdraw from New York City taxpayers the enlarged right to the writ to review the honest, but erroneous, judgment of the commissioners of taxes and assessments as to the valuation of property within the statutory rule, and not to deprive them of all redress for an admitted, deliberate, and intentional departure from such rule.   It doubtless would have been competent for the legislature to have taken away the right to the common-law writ of certiorari (People v. Betts, 55 N. Y. 600);  but an intention so to do is not expressly or clearly shown by the language employed in the amendment of 1885, and such intention is not to be presumed.   Code Civ. Proc. § 2120, subd. 2 (which took effect after certiorari act of 1880), and Throop's note;  Lyman v. Gramercy Club, 28 App. Div. 33, 50 N. Y. Supp. 1004;  People v. Andrews, 52 N. Y. 448, 449;  Suth. St. Const. §§ 289–291;  End. Interp. St. § 127.

The legislature having, by section 819 of the consolidation act, expressly authorized the commissioners of taxes and assessments to increase or diminish the assessed valuations of real or personal estate during the period of review, so as to produce equalization of taxation, the considerations of public policy and convenience which formerly led the courts to refrain from granting the writ, and the cases on that subject (People v. Board of Assessors, 2 Hun, 583; People v. Dixon, 8 Hun, 178;  People v. Newton, 2 Alb. Law J. 437), if they were otherwise in point, are no longer controlling.

Probably it would not have been practicable to have compelled an increase of real-estate valuations on account of the notice required to be given, and such an increase would have been prejudicial to the taxpayers of New York, including the plaintiff's shareholders, as it would have increased New York county's share of the state taxes. From the efforts of such taxpayers before the state board of equalization and in the courts to obtain a more equitable apportionment, it would seem that the percentage of valuation adopted by the taxing officers of New York is quite as high as anywhere in the state. People v. McCarthy, 102 N. Y. 630, 8 N. E. 85.

The question as to what percentage of valuations was adopted materially affected the taxpayers of New York only in equalizing assessments throughout the state, and the lower the percentage the less would be their proportion of the state taxes. Until the assessors in all counties follow the statutory rule, or until the state board of equalization remedies this abuse, it is doubtful whether the court should compel the officers of one county alone to observe the statute, to the prejudice of the taxpayers of such county. All of the taxpayers of a county are, however, interested in having a uniform percentage of valuation adopted, and applied to all real and personal property. A legal remedy should be, and I think was, afforded, by mandamus or by certiorari, to compel the assessors to follow the same rule of percentage of valuations as to both real and personal property, and thus produce the equality of taxation required by law. Wilson v. Mayor, etc., 4 E. D. Smith, 691. One proceeding, if effectual, would have inured to the benefit of all aggrieved taxpayers. People v. Board Sup'rs Westchester Co., 57 Barb. 377.

The question remaining to be considered is whether the plaintiff, as distinguished from its stockholders, had this remedy by certiorari. Such a remedy having been afforded to the individual stockholders, I am not prepared to hold that the plaintiff can maintain this suit, even if it could not have obtained a writ to review the assessment. I am of opinion, however, that the bank could have maintained a certiorari proceeding. Formerly the banks reviewed such assessments by certiorari, without the question having been raised (People v. Commissioners of Taxes, 8 Hun, 536; Id., 67 N. Y. 516; People v. Commissioners of Taxes, 9 Hun, 650; Id., 69 N. Y. 91); but it was held in People v. Wall St. Bank, 39 Hun, 525, and in People v. Coleman, 41 Hun, 344, that neither a bank nor its receiver was a party aggrieved, as to assessments against its stockholders on capital stock, and that neither could maintain certiorari to review the same. The law has been materially changed since these decisions. The only duty then enjoined upon banks with respect to such taxes was to withhold dividends declared in favor of stockholders until they paid the taxes imposed on their stock. Notice of the assessment is required to be given to the bank, and not to the stockholders, and the statute now provides that:

"Every such bank or banking association shall retain dividends until the delivery to the collector of the tax roll and warrant of the current year, and within ten days after such delivery shall pay to such collector so much of such

dividend as may be necessary to pay any unpaid taxes assessed on the stock upon which such dividend is declared."

The plaintiff alleges that it held dividends applicable; that it knew of the violations of the statute by the taxing officers; that its stockholders forbade its appropriating their dividends to pay the taxes, notwithstanding the mandatory language of the statute; and that it will be subjected to suits by them if it does, and its chartered rights will be impaired if the courts do not grant relief. The consolidation act (sections 819, 820) uses synonymously the words "affected" and "aggrieved," as applied to the parties entitled to a hearing or review. If the bank should pay the taxes, neither it nor its stockholders could recover back the same; for, although the assessors did not have jurisdiction to assess according to the arbitrary rule adopted by them, they did have jurisdiction of the subject-matter. Bank of Commonwealth v. Mayor, etc., 43 N. Y. 184; Buffalo & S. L. R. Co. v. Board Sup'rs Erie Co., 48 N. Y. 93; Tripler v. City of New York, 125 N. Y. 617, 26 N. E. 721.

This state of facts and law clearly distinguishes the case under consideration from those last cited, and should, I think, upon principle, give the bank a standing to obtain a review by certiorari, and have the valuations determined according to the rule and principle prescribed by the statute, or, if that should be impracticable, then according to some uniform rule or principle that will result in substantial equality of the burdens of taxation, as contemplated by law, before it is compelled to pay the taxes. Laws 1882, c. 409, § 318 (former banking law); Laws 1896, c. 908, § 72 (new banking law); Cummings v. Bank, 101 U. S. 156, 157; National Bank v. Com., 9 Wall. 353.

These considerations lead to the conclusion that the complaint fails to state a cause of action for equitable relief, and the demurrer thereto must be sustained; and, inasmuch as the defect cannot be obviated by amendment, final judgment is directed, dismissing the complaint, with costs.